**John H. MARCUS, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, A Corporation; et al., Defendants.**

Civ. A. No. 78–470–N.

United States District Court,
M. D. Alabama, N. D.

June 21, 1982.

Donald L. Collins, Gadsden, Ala., Ira De Ment, Montgomery, Ala., Alex W. Newton, Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiff.

Robert A. Huffaker, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for St. Paul Fire & Marine Ins. Co.

OPINION

VARNER, Chief Judge.

This cause is before the Court on Defendant St. Paul's motion for partial summary

judgment filed herein March 5, 1982.[1] St. Paul's motion seeks summary judgment as to Count II (the negligence claim) and as to Count IV (the bad faith claim). The Court has decided that summary judgment on the bad faith claim should be granted but that summary judgment on the negligence claim should be denied.

TORT OF BAD FAITH. The question of whether St. Paul acted in bad faith in refusing to acknowledge coverage under its policy with Plaintiff must be analyzed under the standard supplied by the Alabama Supreme Court decision in *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916, 924, 925 (Ala., 1981):

"The first tier of the test promulgated by Mr. Justice Embry and adopted by this Court in *Chavers* [*v. National Security Fire and Casualty Co.*, 405 So.2d 1 (Ala. 1981)] establishes that the tort of bad faith refusal to honor a direct claim arises when there exists 'no lawful basis for the refusal coupled with actual knowledge of that fact.' 'No lawful basis,' as expressed in that opinion, means that the insurer lacks a legitimate or arguable reason for failing to pay the claim. See *Michael v. National Security Fire & Casualty Co.*, 458 F.Supp. 128 (N.D.Miss.1978). That is, when the claim is not fairly debatable, refusal to pay will be bad faith and, under appropriate facts, give rise to an action for tortious refusal to honor the claim. *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. 'Coupled with actual knowledge of that fact' implies conscious doing of wrong. Bad faith, then, is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will.

"The second tier of the test is an elaboration on the first. The trier of fact, by

finding, on the part of the insurer, an 'intentional failure to determine whether or not there was any lawful basis for refusal,' may use that fact as an element of proof that no lawful basis for refusal ever existed. The relevant question before the trier of fact would be whether a claim was properly investigated and whether the results of the investigation were subjected to a cognitive evaluation and review. Implicit in that test is the conclusion that the knowledge or reckless disregard of the lack of a legitimate or reasonable basis may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured. *Of course, if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith.* Otherwise, the insurer's knowledge of the non-existence of any debatable reasons for refusal would be a question for the finder of fact, i.e., the jury. [emphasis added]

" * * *

"If a lawful basis for refusal had existed, the insurance company would have valiantly argued that fact. Instead, after plaintiff filed suit, the insurer offered to pay the remainder of the face value of the policy. If the trial judge had found *a lawful basis, i.e., legitimate or arguable reason,* for refusal, he would have directed a verdict in favor of the insurer on Count III, the wrongful, intentional and unreasonable refusal to pay. * * *." [emphasis added]

From the foregoing language, it appears that the central inquiry this Court must make is whether St. Paul had, as a matter of law, "a lawful basis, i.e., a legitimate or arguable reason * * * ", for denying Plaintiff benefits under the policy. *Gulf Atlantic*, supra, at 925. In this Court's opinion, this question must be answered in the affirmative.

A review of the various decisions of the courts, which reviewed the question of

---

1. For a full explanation of the facts of this case, see the Court of Appeals decision in *Marcus v. St. Paul Fire & Marine Ins. Co.*, 651 F.2d 379 (5th Cir., Unit B, 1981).

whether Plaintiff's conduct was covered under the terms of the policy, reveals a division of opinion. First, Judge Beasley, the Circuit Court Judge who first decided this question in litigation related to the present suit and who granted summary judgment for St. Paul, stated that:

"It is the judgment of the Court that the damages suffered by the Plaintiff grew out of a relationship with John H. Marcus that was not that of attorney and client." See, Exhibit 11 to Defendant's Motion for Summary Judgment filed herein February 26, 1979.

Secondly, this Court in earlier proceedings in this case entered summary judgment on the ground that Plaintiff's damages did not result from an attorney-client relationship. The Court then stated:

"[T]he Plaintiff had entered a creditor-debtor relationship" and that "[since the attorney malpractice insurance policy] does not cover any action and resulting judgments against the Plaintiff as a creditor [sic—debtor], the Defendant St. Paul had no obligation to defend the Plaintiff in those actions or to satisfy the judgments rendered against the Plaintiff." See, Order of this Court entered July 6, 1979.

Finally, when the question of whether the attorney malpractice policy involved here covered the losses resulting from Plaintiff's actions reached the Alabama Supreme Court and was eventually decided in favor of the Plaintiff, two of the Justices dissented from the majority opinion and essentially agreed with this Court and with Judge Beasley:

"Indeed, Marcus took advantage of his client's personal trust in him in borrowing her money for his personal use. But this stretches the 'but for' rule to impermissible limits. 'Damages arising out of personal services * * * in the insured's capacity as a lawyer' is a legitimate restriction of coverage; and these facts lend themselves to but one legal conclusion: Marcus received a personal loan from Ms. Watkins. He was acting personally and individually in borrowing the money and in defaulting in his obligation for repayment.

"The facts out of which his liability arose constitute a lawyer/client relationship as a matter of law or they do not." See, *Watkins v. St. Paul Fire & Marine Ins. Co.*, 376 So.2d 660 (Ala.1979); *Miles v. St. Paul Fire & Marine Ins. Co.*, 381 So.2d 13 (Ala.1980).

All of these decisions by courts charged with the responsibility of studying and ascertaining the law and/or on occasion ascertaining whether fact issues remain clearly demonstrate, as other factors could not, that St. Paul's refusal to acknowledge coverage was lawful in that a legitimate or arguable reason for denying benefits existed. When four of 11 judges considering the question of whether certain actions fall within the coverage of the policy decide that it does not, certainly common sense would indicate that St. Paul had, *as a matter of law*, and *arguable* reason for denying benefits to Plaintiff.

STATUTE OF LIMITATIONS. In this Court's opinion, Defendant has failed to carry its burden on the question of Count II and Count IV being barred by the statute of limitations. See, *S.E.C. v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir. 1980).

## CONCLUSION

This Court finds that there is no genuine issue as to any material fact and that Defendant is entitled to a judgment as a matter of law on Count IV of the complaint. Defendant's motion will, in all other respects, be denied.

An Order will be entered in accordance with this Opinion.