796 P.2d 134

**Jerry Bryant O'NEIL, and Jerry Bryant O'Neil, Guardian ad Litem for David Arthur O'Neil, Wendy Kay O'Neil, Laura Beth O'Neil, Sara Louise O'Neil, and Maria Jennifer O'Neil, Plaintiffs–Appellants,**

v.

**Thomas M. VASSEUR, Norman L. Gissel, and Thomas M. Vasseur and Norman L. Gissel, doing business together as "Vasseur & Gissel, Attorneys at Law," Defendants–Respondents.**

No. 17804.

Court of Appeals of Idaho.

Jan. 26, 1990.

Rehearing Denied Feb. 28, 1990.

Petition for Review Denied Aug. 31, 1990.

Jerry B. O'Neil, plaintiffs-appellants pro se.

Mark S. Prusynski and W. Scott Wigle, Boise, for defendants-respondents.

SMITH, Judge Pro Tem.

In this appeal, Jerry O'Neil challenges the district court's order granting Thomas Vasseur and Norman Gissel's motion for summary judgment in an action involving alleged attorney malpractice. We affirm.

We are asked by O'Neil to address several questions:

1. If an attorney, by willful neglect and in bad faith, delays obtaining a judgment for his client, should the attorney be held liable for his client's damages under a bad faith tort theory?

2. If so whether he should be held liable for damages:

    (a) —associated with completing performance and mitigating damages in the underlying case;

    (b) —for the loss of use of the monetary judgment on the original case during the period of delay;

    (c) —representing emotional damages and other injury, if any, associated with the attorney's refusal to proceed with the client's case;

    (d) —to serve as punitive or exemplary damages.

3. Whether O'Neil should be allowed discovery of relevant information possessed by the Idaho State Bar Commission regarding the attorneys.

In response, the attorneys ask us (1) not to consider the bad faith issue, contending that issue was not raised in the trial court and (2) to consider whether the damages in this action were already awarded in another action, *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1987); 116 Idaho 507, 777 P.2d 729 (1989) (hereinafter *Schuckardt*).

The facts surrounding this case are complex and have been litigated in the Idaho courts for several years. O'Neil's wife and children became involved in the "Fatima Crusade," a radical sect of the Catholic Church led by Bishop Francis Schuckardt. In December, 1975, Vasseur and Gissel, formerly "Vasseur & Gissel, Attorneys at Law," were hired by O'Neil to prosecute an alienation of affections case against Schuckardt. O'Neil paid the attorneys a retainer fee of $2000 at that time.

The attorneys filed a complaint against Schuckardt in December, 1975. However, for the next three years and nine months, they engaged in little formal activity on the case despite continual pressure from O'Neil to proceed with the matter.

During this time, the relationship between O'Neil and his attorneys deteriorated. In October, 1979, after learning the Schuckardt case was about to be dismissed for lack of activity, O'Neil took over the case himself and filed this action, pro se, against the attorneys.

Gissel formally withdrew as O'Neil's attorney on November 19, 1979, and Vasseur withdrew the next day. Since its commencement, this case has undergone a number of summary judgment motions and amendments to the pleadings. Most significantly, in 1988, this Court dismissed O'Neil's first appeal due to improper certification of a partial summary judgment. *O'Neil v. Vasseur*, 113 Idaho 886, 749 P.2d 1011 (Ct.App.1988) (review denied). On remand, the district court entered a final summary judgment in favor of Vasseur and Gissel. At that time the $2000 retainer fee, plus interest accrued thereon, was returned to O'Neil. This appeal followed.

The summary judgment of September 9, 1988, from which O'Neil has appealed, was based in part upon a stipulation by which O'Neil agreed to accept the sum of $2000 which previously had been deposited in court as full satisfaction for the above-mentioned retainer plus interest on the unearned portion. According to the stipulation, the parties further agreed that all prior agreements between them would be

terminated, that all files belonging to the O'Neils would be returned to them and that summary judgment in the "form attached" to the stipulation could be entered by the court without the necessity of any further hearing on the matter.

The summary judgment denied any damages to O'Neil for the following:

1. All damages associated with completing performance and mitigating damages in *Schuckardt;*

2. All damages for the loss of use of the monetary judgment in *Schuckardt* for any period it was delayed due to the acts of Vasseur and Gissel;

3. Any damage associated with Vasseur and Gissel's refusal to proceed in *Schuckardt;* and

4. Punitive and/or exemplary damages. The summary judgment concluded with the statement: "This order and judgment, including the prior orders referred to above, constitutes a full and final determination of all of the claims of the parties in this action, with the exception of any claims for costs that may be awardable pursuant to Rule 54 of the Idaho Rules of Civil Procedure."

The summary judgment did not address the question of whether there was an issue of "bad faith" tort in this case. However, a prior summary judgment memorandum decision and order, dated July 19 and 20, 1983, and filed July 22, 1983, which was written by Judge Richard D. Magnuson, did consider O'Neil's arguments on issues of "want of knowledge, recklessness, constructive fraud and bad faith." Judge Magnuson held O'Neil had not shown facts indicating intentional, wilful and wanton misconduct. This order appears to have been included by reference in the summary judgment of September 9, 1988, from which this appeal was taken.

## STANDARDS FOR SUMMARY JUDGMENT

The standards controlling the entry and review of a summary judgment are well-settled. Disputed facts are viewed in favor of the party opposing the motion for summary judgment. Where a jury has been requested, as in the present case, the non-moving party must receive the benefit of every reasonable inference that may be drawn from the facts presented. *Earl v. Cryovac, A Division of W.R. Grace Co.,* 115 Idaho 1087, 772 P.2d 725 (Ct.App.1989) (review denied); *see also Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). Therefore, O'Neil had the burden to demonstrate to the judge that a triable issue arose from the facts. *Earl, supra;* 6 J. MOORE, W. TAGGART, & J. WICKER, MOORE'S FEDERAL PRACTICE § 56.11 (2d ed.1988). "A 'triable issue' exists whenever reasonable minds could disagree as to the material facts or the inferences to be drawn from those facts." *Earl, supra* 115 Idaho at 1093–94, 772 P.2d at 731–32. This threshold of reasonableness is as far as the judge may look. The task of weighing the evidence and observing the demeanor of witnesses is properly preserved for the jury. *Id.* at 1094, 772 P.2d at 732.

Here, both parties offered motions for summary judgment. Vasseur also demanded a jury trial. In his memorandum decision, the judge acknowledged that Vasseur and Gissel's representation of O'Neil's alienation of affection case was negligent.[1] The judge correctly noted that to establish liability for negligence, damage caused by negligence must be proven to sustain a recovery. The judge stated:

Normally proximate cause is a question for the trier of fact and under the circumstances here the Court is unable to find as a matter of law that [Vasseur and

---

1. O'Neil eventually prevailed in his action against Schuckardt on the ground that Schuckardt's conduct constituted an invasion of O'Neil's privacy. The Idaho Supreme Court also held that there is no longer a cause of action for alienation of affections in the State of Idaho. *See O'Neil v. Schuckardt,* 112 Idaho 472, 733 P.2d 693 (1987). The invasion of privacy case

was remanded by the Idaho Supreme Court with directions to reinstate the verdict awarding each of the O'Neils' five children $50,000. The Court also directed the district court to conduct a new trial resolving Jerry O'Neil's individual claim for invasion of privacy and his claim for punitive damages. *O'Neil v. Schuckardt,* 116 Idaho 507, 777 P.2d 729 (1989).

Gissel's] negligence is the proximate cause of [O'Neil's] loss of one-half of the alienation award or that *gross* negligence or wanton, wilful or reckless acts will entitle [O'Neil] to an award of exemplary or punitive damages. On the contrary, [O'Neil] has shown no right to either award. (Emphasis original.)

We are thus presented with the question of whether the district court properly dismissed O'Neil's claim by granting Vasseur and Gissel's summary judgment motion. Because the invasion of privacy suit is still unresolved, the damages that may be awarded therein are speculative, conjectural and unliquidated. Furthermore, it has not been established that Vasseur and Gissel's delay is responsible for a diminution of that possible award. To prove this contested fact, O'Neil would have to prove the amount a jury would have awarded absent the delay. We agree with the district court that any evidence tending to shed light on this question would be inadmissible due to its speculative nature. In negligence cases, summary judgment is appropriate in only the most clear situations. *Jarman v. Hale,* 112 Idaho 270, 273, 731 P.2d 813, 816 (Ct.App.1986). Negligence issues are jury questions "unless the proof is so clear that different minds cannot reasonably draw different conclusions or where all reasonable minds would construe the facts and circumstances of the case in only one way." *Annau v. Schutte,* 96 Idaho 704, 707, 535 P.2d 1095, 1098 (1975). Customarily, a claim of negligence presents questions of fact for the jury to resolve. Contested facts may not be resolved at the summary judgment stage. *Jarman, supra; Fajen v. Allstate Insurance Co.,* 96 Idaho 886, 538 P.2d 1190 (1975); *Johnson v. Stanger,* 95 Idaho 408, 510 P.2d 303 (1973). *See also*

*State of Idaho v. Bunker Hill Co.,* 662 F.Supp. 725 (D.Idaho 1987). We will now consider the issues in the light of these standards.

## TORT OF BAD FAITH

Vasseur and Gissel contend this Court should not consider the issue of bad faith as raised by O'Neil in his briefs. They assert this issue was not presented to the district court. We disagree. The record clearly shows that this issue was considered by Judge Magnuson and decided by him against O'Neil on or about July 19, 1983. As stated, this decision was incorporated in the summary judgment of September 9, 1988. Therefore, this issue may be considered in this appeal.

The phrase "justice delayed is justice denied," takes on significance when reviewing the circumstances surrounding this case. According to Disciplinary Rule 6–101 "A lawyer shall not ... [n]eglect a legal matter entrusted to him." An attorney is bound to diligently represent his client's interests. O'Neil claims he is entitled to collect compensatory damages from Vasseur and Gissel because Vasseur and Gissel's lengthy delay breached the attorney-client contract agreed upon by both parties.[2] O'Neil contends this delay constituted bad faith by Vasseur and Gissel.

In Idaho, the tort of bad faith is utilized mostly in insurance litigation where the insurance company refuses to honor a direct claim without a lawful basis for such refusal coupled with actual knowledge of that fact.[3] " 'No lawful basis,' ..., means the insurer lacks a legitimate or arguable reason for failing to pay the claim." *Marcus v. St. Paul Fire and Ma-*

---

**2.** In his memorandum decision and order in this case, District Judge Towles addressed the bad faith tort issue by noting that "[l]ong delay may cause the loss of necessary witnesses. The complication arising from the death of a party or bankruptcy may interfere with the collection of a judgment even if one is eventually attained. Many other undesirable results could conceivably accrue."

**3.** Other cases where bad faith tort claims have arisen include: *Rawson v. United Steelworkers*

*of America,* 111 Idaho 630, 726 P.2d 742 (1986) (union's duty of fair representation); *Rasmuson v. Walker Bank & Trust Co.,* 102 Idaho 95, 625 P.2d 1098 (1981) (emotional distress); *Boise Dodge v. Clark,* 92 Idaho 902, 453 P.2d 551 (1969) (fraud); *Kent v. Pence,* 116 Idaho 22, 773 P.2d 290 (Ct.App.1989) (attorney fees); and *Holmes v. Union Oil Co. of California,* 114 Idaho 773, 760 P.2d 1189 (Ct.App.1988) (wrongful discharge action).

rine Ins. Co., 543 F.Supp. 253 (M.D.Ala. 1982); see also Anderson v. Continental Ins. Co., 85 Wis.2d 675, 271 N.W.2d 368 (1978). Bad faith embodies a dishonest purpose and a breach of the known duty of good faith and fair dealing through some motive of self-interest or ill will. "Bad faith, then, is not simply bad judgment or negligence." Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916, 924 (Ala.1981).

An action for bad faith against an insurer exists under the common law in the State of Idaho. White v. Unigard Mutual Ins. Co., 112 Idaho 94, 730 P.2d 1014 (1986). When addressing whether summary judgment is appropriate in bad faith claims, one court stated that: "[o]ne casualty in the recognition of the tort of bad faith by the state may well be summary judgment. Bad faith connotes a state of mind, which inherently and nearly always avoids summary dismissal in deference to jury determination." State Farm Fire & Cas. Co. v. Trumble, 663 F.Supp. 317, 321 (D.Idaho 1987). See also State of Idaho v. Bunker Hill Co., supra. In State Farm the court concluded that to prove the tort of bad faith, one must merely show the insurer's conclusions leading to the denial of the claim are based on an incomplete investigation of that claim. Id. Similarly, bad faith on the part of Vasseur and Gissel in this case might have been shown by intentional delay in pursuing O'Neil's case. "[T]he duty owed by one party to another in contract could give rise to a cause of action in tort if the duty to take due care arises independently of the contract, i.e., a mere breach of contract will not support a tort cause of action, but a breach of a separate duty to act reasonably will suffice." Reynolds v. American Hardware Mut. Ins., 115 Idaho 362, 365, 766 P.2d 1243, 1246 (1988).

■ When an attorney agrees to perform a service in a particular manner, an express contract can exist. Lindner v. Eichel, 34 Misc.2d 840, 232 N.Y.S.2d 240 (1962), aff'd 17 A.D.2d 735, 233 N.Y.S.2d 238 (1962). However, if the attorney's only agreement is to represent the client with ordinary skill and knowledge, that is more

frequently characterized as an implied contract—the breach of which is tortious. R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 8.1 at 402 (3d ed. 1984).

■ Whether an attorney-client relationship exists is a question for the trier of fact. Id. at § 11.2 at 637; see also Beal v. Mars Larsen Ranch Corp., Inc., 99 Idaho 662, 586 P.2d 1378 (1978). In 1975, O'Neil and the two attorneys entered into an attorney-client relationship when the attorneys accepted O'Neil's retainer and agreed, in writing, to prosecute O'Neil's alienation of affection action under a contingent fee arrangement. Vasseur and Gissel therefore undertook the duty to diligently represent O'Neil.

■ Our consideration of this "bad faith" theory reveals that we do not have to decide today whether the "bad faith" tort theory is applicable in this case. First, we agree with the district judge that there is no showing by affidavit or otherwise that the attorneys were guilty of any intentional or wilful misconduct in causing a delay. Second, if the attorneys negligently caused a delay, there is no showing of facts by affidavit or otherwise that O'Neil suffered compensable damage by any such unjustified delay.

## MITIGATION OF DAMAGES

■ By taking over the Schuckardt case and proceeding pro se, O'Neil has so far been successful in the lawsuit and has mitigated any damages allegedly caused by the attorneys. It is well established that the party entitled to the benefit of a contract has as a duty to use "reasonable exertion" to mitigate his damages. Wicker v. Hoppock, 73 U.S. (6 Wall.) 94, 18 L.Ed. 752 (1878). Such a policy protects "persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts." Industrial Leasing Corp. v. Thomason, 96 Idaho 574, 577, 532 P.2d 916, 919 (1974); quoting Wright v. Baumann, 239 Or. 410, 398 P.2d 119 (1965).

■ The same theory applies in the area of legal malpractice disputes. "If an

attorney's negligent conduct in representing a client leaves the client with an alternative remedy or remedies which are both viable and equivalent, the result may be that the client suffers no loss or a reduced loss as the proximate cause of the attorney's negligent conduct." *Swanson v. Sheppard*, 445 N.W.2d 654, 658 (N.D.1989). Here, O'Neil had a duty to mitigate the damages he could have suffered by Vasseur and Gissel's breach of the attorney-client relationship contract. O'Neil did so. He pursued the *Schuckardt* case pro se and was awarded damages therein. Therefore, due to O'Neil's pursuits, no compensable damages arose from the breach of contract by Vasseur and Gissel.

Vasseur and Gissel maintain that an attorney is not liable if his misconduct merely results in delaying the resolution of an action. *Eddleman v. Dowd*, 648 S.W.2d 632 (Mo.App.1983); *Bourke v. Warren*, 118 Mich.App. 694, 325 N.W.2d 541 (1982). Compensable damages suffered by a plaintiff are limited to the pecuniary loss attributable to the wrongful acts of the defendant. *Williams v. Bone*, 74 Idaho 185, 259 P.2d 810 (1953). O'Neil eventually won a monetary damage award against Bishop Schuckardt without Vasseur and Gissel's assistance. *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1987). Therefore, O'Neil has not demonstrated any pecuniary losses attributable to Vasseur and Gissel's delay. Thus, no compensatory damages are recoverable.

However, O'Neil claims that he is entitled to reasonable attorney fees because he represented himself and should collect his expenses for the *Schuckardt* litigation. Because O'Neil litigated that case pro se he did not incur additional attorney fees. Non-attorney parties who appear in an action pro se are not entitled to recover attorney fees. *Curtis v. Campbell*, 105 Idaho 705, 672 P.2d 1035 (1983); *O'Neil v. Schuckardt*, 112 Idaho at 480, 733 P.2d at 701. Furthermore, the record shows that Vasseur and Gissel accepted the original case on a contingent fee basis. O'Neil's successful pursuit of his case pro se has saved a substantial amount of attorney fees. In effect, he will keep the contingent fees which he would have had to pay to the attorneys.

O'Neil contends he should be entitled to recover from the attorneys amounts paid to other attorneys after Vasseur and Gissel were dismissed. We disagree. If Vasseur and Gissel had remained on the case and had engaged other counsel to assist them and had paid such other counsel for their services, those charges could not have been charged to O'Neil. On a contingent fee situation, such sub-contracted attorney fees would be overhead expenses incurred by Vasseur and Gissel.

On the other hand, any such sub-contracted attorney fees might be recoverable from the non-prevailing defendants in the original case. *See Nalen v. Jenkins*, 114 Idaho 973, 763 P.2d 1081 (Ct.App.1988); *see also Nalen v. Jenkins*, 113 Idaho 79, 741 P.2d 366 (Ct.App.1987). Depending on the circumstances, this could be true even if Vasseur and Gissel had stayed in the case and had sub-contracted some of their work. *Id.* In any event, the sub-contract attorney fees paid by O'Neil in this case are not chargeable to Vasseur and Gissel.

By taking over the case from counsel retained on a contingent fee basis, O'Neil has assumed the overhead burdens involved including attorney fees paid to his other counsel.

## PREJUDGMENT INTEREST

Next, O'Neil contends he is entitled to recover damages for the loss of use of the *Schuckardt* judgment or interest on that judgment for the delay of three years and nine months caused by Vasseur and Gissel. The district court disallowed such recovery because the loss constituted an unliquidated sum and any award would be purely speculative on the part of the court.

Prejudgment interest is allowable in Idaho only when the amount claimed is liquidated or readily ascertainable by mathematical computation. *Chenery v. Agri-Lines Corp.*, 115 Idaho 281, 766 P.2d 751 (1988); *Reynolds v. American Hardware Mut. Ins. Co.*, 115 Idaho 362, 766 P.2d 1243

(1988). Where damages are not liquidated, it is necessary to look to the individual circumstances in making the determination. *Reynolds, supra.*

■ As matters stand now, the original case is resolved as to the children but unresolved as to O'Neil. *See O'Neil v. Schuckardt,* 112 Idaho 472, 733 P.2d 693 (1987), and *O'Neil v. Schuckardt,* 116 Idaho 507, 777 P.2d 729 (1989). O'Neil contends that while the district court was correct in stating that any diminution of the award is too speculative for a jury to decide, the court was not correct in denying interest on the value of whatever judgment the jury finally gives to the O'Neils from *Schuckardt.* O'Neil argues that interest for the delay in the use of funds O'Neil eventually may recover from Schuckardt is not prejudgment interest, but rather is consequential damages. If O'Neil is correct in this position we would have a situation where interest as consequential damages would have to be calculated on unliquidated damages up to the time the jury reached its verdict in *Schuckardt.* Such a calculation would be speculative. Interest calculated on damages once ascertained would no longer be speculative but such interest from the time of the verdict would be included in the judgment against Schuckardt and could not be assessed against Vasseur and Gissel because to do this would allow a double recovery. It does not appear that O'Neil can recover prejudgment interest in *Schuckardt* because such a recovery would be speculative. It is just as speculative to attempt to assess such interest in *Schuckardt* against Vasseur and Gissel in this case as consequential damages. Accordingly, we agree with the district court that any award of such prejudgment interest would be purely speculative.[4]

## EMOTIONAL DISTRESS

■ O'Neil urges this Court to award damages for emotional distress inflicted on his children and himself from the lengthy litigation process. To prevail in an action for emotional distress, O'Neil must prove Vasseur and Gissel's conduct caused O'Neil to suffer physical manifestations of the emotionally distressing circumstances. *Rasmuson v. Walker Bank & Trust Co.,* 102 Idaho 95, 625 P.2d 1098 (1981). While the record in this case shows the existence of possible evidence of nervous manifestations suffered by O'Neil, the record shows no physical manifestations which will justify an award for emotional damage. O'Neil alleges that his daughter suffered a self-inflicted gunshot wound caused by emotional distress resulting from the various litigation engaged in by O'Neil. This general allegation, lacking any factual basis showing causation, is speculative.

To recover damages for the intentional infliction of emotional distress, O'Neil must show that Vasseur and Gissel's conduct was so extreme and outrageous they intended that O'Neil and his family would experience emotional difficulties. *Brown v. Fritz,* 108 Idaho 357, 699 P.2d 1371 (1985). O'Neil has not shown by affidavit or otherwise outrageous conduct sufficient to find that Vasseur and Gissel intentionally inflicted emotional distress upon him or his family. Accordingly, we hold the district court was correct in refusing to allow a claim for emotional damages in this case.

## PUNITIVE DAMAGES

■ The district court held that punitive damages would not be awardable in this case. The court reasoned that punitive damages are reserved for the most unusual and compelling circumstances. The district court declared the reason for the disfavor in awarding such damages was the emphasis on punishment and deterrence rather than compensation of O'Neil which is the normal role for a civil action. We agree with the district court.[5]

---

4. The situation here is not a case where interest can be charged as consequential damages because a party has had to borrow money and pay interest thereon in order to remedy a harm. *See Spreader Specialists, Inc. v. Monroc, Inc.,* 114 Idaho 15, 752 P.2d 617 (Ct.App.1987).

5. By a new statute, punitive damages are "awarded to a claimant, over and above that which will compensate the claimant for actual personal injury and property damage, to serve the public policies of punishing a defendant for outrageous conduct and of deterring future like

In the complaint, O'Neil prays for an award of punitive damages. O'Neil would be eligible for punitive damages if the trier of fact found that Vasseur and Gissel's negligent conduct was such an extreme deviation from reasonable standards expected of legal counsel. However, Vasseur and Gissel's conduct must rise to the level of malice, fraud, oppression, wantonness, or gross negligence before punitive damages are available. In that event, the punitive damage award would operate to punish and deter Vasseur and Gissel and other attorneys from engaging in similar conduct. *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); *see e.g.* IDJI 921-1, 2 (1988).

■ Punitive damages are not favored in the law and should only be awarded in the most unusual and compelling circumstances. *Cheney, supra.* The policy behind punitive damages is deterrence rather than punishment. *Soria v. Sierra Pacific Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986).

O'Neil alleges that the delay in prosecuting the invasion of privacy case warrants an award of punitive damages. Vasseur and Gissel counter O'Neil's argument by explaining the delay was due to their monitoring of a similar case against Schuckardt in another jurisdiction. From the pleadings and affidavits submitted to the court, O'Neil has failed to show facts whereby Vasseur and Gissel "acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence.'" *Cheney, supra* 104 Idaho at 904–05, 665 P.2d at 668–69, *quoting Morrison v. Quality Produce, Inc.*, 92 Idaho 448, 450, 444 P.2d 409, 411 (1968); *see also Nahas v. Hulet*, 114 Idaho 23, 752 P.2d 625 (Ct.App.1988).

## DISCOVERY ISSUE

O'Neil has raised the question of whether the district court erred in refusing discovery of relevant information possessed by the Idaho State Bar Commission regarding Vasseur and Gissel. In view of our affirmance of the order granting summary judgment, we need not consider the discovery issue.

## CONCLUSION

For the reasons stated above we conclude the district court did not commit error in granting Vasseur and Gissel's motion for summary judgment. The judgment is affirmed. No costs awarded.

WALTERS, C.J., and SWANSTROM, J., concur.

conduct." I.C. § 6–1601(8) (Supp.1989). In order to recover punitive damages, "the claimant must prove, by a preponderance of the evidence, oppressive, fraudulent, wanton, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6–1604(1) (Supp.1989). This statute was not in effect in the time frame involved in this case.