**Eileen R. HOITT, Individually and as Personal Representative of the Estate of John Hoitt**

v.

**Richard W. HALL.**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1995.

Decided July 7, 1995.

Arthur J. Greif (orally), Lowry & Associates Attorneys, Bangor, for plaintiff.

Christopher C. Taintor (orally), Norman, Hanson & DeTroy, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

1. 14 M.R.S.A. § 8107 (1980 & Supp.1994).

RUDMAN, Justice.

Eileen Hoitt, individually and as personal representative of the estate of John Hoitt, appeals from the denial by the Superior Court (Penobscot County, *Saufley, J.*) of her motion for a new trial of her legal malpractice claim against Richard W. Hall. Eileen contends that a number of errors in evidentiary rulings and the irrationality of the jury's award of damages required the trial court to grant a new trial. Hall cross-appeals, seeking entry of judgment in his favor.

John Hoitt died following an accident in which the pick-up truck he was driving struck a snowplow truck owned by the State of Maine and operated by Jacqueline Lee Ware, a state employee. John had borrowed the pick-up truck he was driving from a neighbor, Thomas Thurlow. Eileen retained attorney Hall to represent her in a wrongful death action. Hall failed to file a notice of the tort claim as required by the Maine Tort Claims Act[1], and Eileen lost the opportunity to sue the State. Hall's failure to file the requisite notice was acknowledged by the parties.

Eileen commenced an action against Thurlow for negligence and Hall for legal malpractice. She settled with Thurlow for $50,000 and dismissed her complaint against him with prejudice and without costs. The legal malpractice case required Eileen to prove that she would have recovered against the State if Hall had filed a timely claim. The court ruled that the jury would apportion fault only between John and the State of Maine, rather than among John, the State, and Thurlow. The jury found both the State's employee and John to have been negligent. The jury determined Eileen's damages to be $60,000 for pecuniary loss suffered as a result of John's death, $15,000 for Eileen's loss of consortium, and $15,000 for John's conscious pain and suffering. The jury then reduced the total damages of $90,000 by $40,000 to account for John's negligence, thus awarding Eileen $50,000. The court denied Eileen's motion for a new trial and awarded $0.00 to reflect the settlement reached with Thurlow.

## Adequacy of the Damages

■ Viewing the evidence in the light most favorable to Hall, *see Stubbs v. Bartlett,* 478 A.2d 690, 692 (Me.1984), and deferring to the jury on issues of credibility, *id.,* we find no abuse of discretion in the trial court's ruling that the jury's award of damages was not the product of bias, prejudice, improper influence, mistake of law, or disregard of the facts. *Currier v. Cyr,* 570 A.2d 1205, 1210 (Me.1990).

Eileen argues that the jury ignored the testimony of her economic consultant, Robert Doucette. Doucette testified that the present value of the stream of future income lost by Eileen as a result of her husband's death was approximately $300,000. He also stated, however, "If Mr. Hoitt would not have lived anyway, then there would have been no pension to be lost. And if Mrs. Hoitt had not lived to a certain age, then she would have lost nothing, even though her husband lived."

■ The jury was not obligated to accept Doucette's calculations, even if uncontroverted. *See Stubbs,* 478 A.2d at 692. The trial court did not abuse its discretion when it found that the jury's determination could not be deemed "irrational." Nor was there any indication of a jury compromise between liability and damages.

## Apportionment of Fault

Eileen argues that the jury should have been allowed to apportion fault among the State, Thurlow, and John. She asks us to decide the issue left undecided in *Minott v. F.W. Cunningham & Sons,* 413 A.2d 1325, 1328 n. 3 (Me.1980): whether, in a case with two or more parties responsible for the plaintiff's injury, the comparison of negligence required by 14 M.R.S.A. § 156 (1980) is between the plaintiff and each responsible party or the plaintiff and all responsible parties.

■ We need not reach this issue because the jury found John's negligence to be less than that of the State, a finding that entitled Eileen to recover. Adding Thurlow's negligence to the equation would not change the result. The statute then requires a jury to reduce the damages "to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage." 14 M.R.S.A. § 156. The jury must first "find and record the total damages which would have been recoverable if the claimant had not been at fault." *Id.* The jury then reduces the total *"by dollars and cents, and not by percentage "* to account for the claimant's share of responsibility for the total damages. *Id.* (emphasis added). The jury in this case determined Eileen's total damages to be $90,000. The jury reduced this amount by $40,000 to account for what it determined to be Eileen's share in the responsibility for the damages. A jury may consider the comparative percentage of fault as one factor in its determination of the just and equitable reduction to reflect claimant's share of responsibility. *See Jackson v. Frederick's Motor Inn,* 418 A.2d 168, 174 (Me.1980) ("The relative fault of the parties as determined in connection with the liability issue is, of course, a relevant factor which may be considered by the jury in its apportionment of the damages. But it is not conclusive.") Eileen voluntarily dismissed Thurlow. The court correctly refused to instruct the jury to consider Thurlow's negligence when it reduced Eileen's damages to the extent it thought just and equitable.

Eileen further argues the opportunity lost by Hall's negligence was that of suing both Thurlow and the State in one action. One may only speculate what action Eileen would have brought had Hall not failed to pursue the claim against the State. In reality, she did sue Thurlow and Hall. The case-within-a-case format allowed her to present her action as she would have absent Hall's negligence. Specifically, she had the opportunity to present to the jury her case against the State and Thurlow. Rather than proceeding in this manner, she settled with Thurlow and released him with prejudice. At that point, it was no longer Hall's negligence but Eileen's own tactical decision that deprived her of the opportunity to present Thurlow's negligence to the jury. The court correctly determined that there was no claim pending against Thurlow that would allow the jury to consider the question of his negligence.

*Reduction of Damages*

■ Eileen contends that because the jury did not consider Thurlow's fault, the award of damages should not have been reduced by the amount of her settlement with Thurlow. Eileen assumes the trial court applied 14 M.R.S.A. § 163 (1980),[2] which it explicitly, and correctly, did not apply. Section 163 mandates reduction of damages awarded against a nonsettling defendant by the settlement amount reached with a settling defendant when recovery is sought for the same injury. *See Hewitt v. Bahmueller,* 584 A.2d 664, 666–67 (Me.1991) (noting that the only time such reduction is not required is when the settlement is reached with a party later determined by a verdict to be without causative fault). Eileen sought recovery from Thurlow for physical injuries stemming from the accident, and from Hall for economic injury stemming from his professional negligence. The trial court correctly reasoned that because the settling defendant (Thurlow) and the nonsettling defendant (Hall) were sued for independent torts, the settlement could not offset the award of damages pursuant to section 163. *See Alexander v. Callanen,* 104 Misc.2d 762, 429 N.Y.S.2d 141, 142 (N.Y.App.Div.1979) (explaining that lawyers potentially liable for professional negligence have no right of contribution against doctors for underlying medical malpractice action).

■ The trial court looked instead to the purpose of damages in legal malpractice actions. The measure of damages is the amount the client would have recovered but for the attorney's negligence. *See Moores v. Greenberg,* 834 F.2d 1105, 1110–13 (1st Cir. 1987). The jury determined that Eileen's losses due to her husband's death amounted to $50,000. Eileen received $50,000 from Thurlow for the same injuries as those re-

sulting from the State's negligence. The trial court properly reduced the award to account for the settlement. *See O'Neil v. Vasseur,* 118 Idaho 257, 796 P.2d 134, 139–40 (Ct.App.1990) (no compensable damages available against attorneys when client successfully pursued case pro se); *Kay v. Bricker,* 485 So.2d 486, 487 (Fla.Dist.Ct.App.1986) (in attorney malpractice case, "[p]laintiff could not recover from the defendant an amount which would exceed the amount of his proven damages.").

*Collateral Source*

■ Hall asked Eileen during cross-examination about her survivor's benefit from John's Air Force pension. She contends this violated the collateral source rule and depressed the jury's award of damages. The collateral source rule holds that a plaintiff who has received compensation for her damages from sources independent of the tortfeasor remains entitled to a full recovery. *See Potvin v. Seven Elms, Inc.,* 628 A.2d 115, 116 (Me.1993).

■ Contrary to Hall's characterization of the benefit as a "continuation of a portion of the pension income otherwise payable to [John Hoitt]," rather than a "replacement of a portion of the pension income lost as a result of Mr. Hoitt's death," we consider it a collateral source. *See Restatement (Second) of Torts* § 920A cmt. b (1979), which provides:

> Payments made or benefits conferred by other sources [sources other than the defendant] are known as collateral-source benefits.... If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a

---

**2.** 14 M.R.S.A. § 163 (1980) provides:

> Whenever a person seeks recovery for a personal injury or property damage caused by 2 or more persons, the settlement with or release of one or more of the persons causing the injury shall not be a bar to a subsequent action against the other person or persons also causing the injury.
>
> Evidence of settlement with a release of one or more persons causing the injury shall not be

admissible at a subsequent trial against the other person or persons also causing the injury. After the jury has returned its verdict, the trial judge shall inquire of the attorneys for the parties whether such a settlement or release has occurred. If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settlement with or the consideration for the release of the other persons.

third party or established for him by law, he should not be deprived of the advantage that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him. One way of stating this conclusion is to say that it is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives.

But for John's action in securing this benefit for Eileen, she would not have received it. John made an advantageous employment/pension arrangement for the benefit of his wife to compensate her to some extent in the event of his death. The benefit was a collateral source.

■ The error is harmless, however. The exchange to which Eileen objected consisted of one question on cross-examination. On redirect Eileen chose to ask the witness more specific questions about the arrangement and the amount Eileen received. Hall's question to Eileen's witness cannot be said to have created the same likelihood of prejudicial impact that counsel's behavior did in *Werner v. Lane*, 393 A.2d 1329, 1332–38 (Me. 1978) (requiring a new trial when, *inter alia*, references were made to the fact that plaintiff was receiving state-subsidized medical care). Any prejudicial impact after Hall's one question was Eileen's handiwork.

*Costs*

■ The trial court ruled that because Eileen recovered nothing in her lawsuit against Hall, it could not consider her a prevailing party and, thus, declined to award her costs. The analysis that determines whether one is a "winner" and, therefore, a prevailing party includes a consideration whether the plaintiff has gained anything through litigation that she could not have gained without it. In *Dodge v. United Services Auto. Ass'n*, 417 A.2d 969, 975 (Me. 1980), we advocated a "functional analysis" of the question whether one is a prevailing party, that is, whether one won or lost. In *Perez v. Baker Packers*, 694 S.W.2d 138, 143 (Tex.Ct.App.1985) (interpreting Rule 131 of the Texas Rules of Civil Procedure), a Texas appeals court described a "successful party" as "one who obtains a judgment of a competent court vindicating a civil claim of right." In *Perez*, the plaintiff had recovered a judgment on his negligence claim but could not collect on the judgment because he had settled with another defendant for an amount greater than the damages awarded. The court stated, "We believe that the determination of a successful party under rule 131 is to be based upon success upon the merits, not upon damages." *Id.* The jury in the instant case determined that Eileen would have obtained a judgment against the State but for Hall's negligence. That she cannot recover from Hall on the judgment because she has been compensated through a settlement may be Hall's good fortune but should not negate what Eileen has obtained—a determination that Hall's negligence resulted in harm or injury to Eileen, that injury being the loss of a viable cause of action. Eileen is entitled to her costs.

*Remaining Issues*

■ Eileen challenges the admission of several photographs. We find no abuse of discretion in their admission. *State v. Robinson*, 628 A.2d 664, 666 (Me.1993). We will not consider those arguments relating to the emotional distress claim she chose not to present. Our finding that Eileen was the successful party disposes of Hall's request on his cross-appeal. Finally, we find no reversible error in the instructions pertaining to the calculation of the present value of future income. While the instructions could have been more precise, Eileen agreed in chambers to the deletion of a portion that may have alleviated the potential for confusion she now cites as problematic. Furthermore, the decision whether to amplify a portion of the instructions is left to the discretion of the trial judge. *See Towle v. Aube*, 310 A.2d 259, 266 (Me.1973).

The entry is:

Judgment affirmed in part and vacated in part. Remanded to the Superior Court with instructions to award costs to plaintiff Eileen Hoitt.

WATHEN, C.J., and ROBERTS, CLIFFORD and DANA, JJ., concurring.

GLASSMAN, Justice, dissenting.

I must respectfully dissent. Contrary to the determination of the trial court and of this Court, the trial court was without authority either by common law rule or by statute to reduce the amount of the damages awarded in the "trial within a trial" by the amount received by Eileen from Thurlow.

The following review of the pertinent common law and statutes discloses that the issue in the present case was foreclosed by the governing common law rules and has only been made possible of presentation by reason of statutory enactments by the Legislature. Prior to the enactment of 14 M.R.S.A. § 156 by P.L.1965, ch. 424, Maine was bound by the common law rule that in an action based on negligence, any negligence, however slight, on the part of a plaintiff that proximately contributed to his alleged injuries was an absolute bar to any recovery of damages from the defendant. *Crocker v. Coombs,* 328 A.2d 389, 391 (Me.1974). The common law rule also mandated that the release of one of several tortfeasors releases the others. *Wells v. Gould and Howard,* 131 Me. 192, 194, 160 A. 30 (1932). This was true though the wrongdoers were severally, rather than jointly, liable for the injury. *Cleveland v. City of Bangor,* 87 Me. 259, 264–65, 32 A. 892 (1895). The language of 14 M.R.S.A. § 163, enacted by P.L.1969, ch. 19, clearly expressed the intent of the Legislature to modify this common law rule. As stated in *Emery Waterhouse Co. v. Lea,* 467 A.2d 986 (Me.1983):

> The overall scheme and purpose of this section is undoubtedly to promote settlements in multiple-party tort cases by depriving such settlements or releases of one tortfeasor of their common-law characteristic of absolutely discharging all other joint and several tortfeasors, permitting a subsequent action against the other parties causing the injury to be tried without the evidence of the settlement or release being disclosed to the trier of facts, and, after favorable verdict in favor of the injured party-releasor, having that verdict against

the other tortfeasor reduced by an amount equal to the consideration received in the prior settlement or release.

*Id.* at 995, 996.

In Eileen's present action at law seeking damages from Richard Hall for his negligent representation of her, it was necessary, pursuant to the procedure heretofore established, that even "[a]ssuming negligent representation, a plaintiff must prove nevertheless that he could have been successful in the initial suit 'absent the attorney's negligent omission to act.' " *Schneider v. Richardson,* 411 A.2d 656, 658 (Me.1979) (quoting *Sohn v. Bernstein,* 279 A.2d 529, 532 (Me.1971)). The issues presented to the jury in this "trial within a trial" were in conformity with the provisions of 14 M.R.S.A. § 156 (1980) and were restricted solely to the conduct of the State by its agent and that of John Hoitt. This resulted in a determination by the jury that the State's negligent conduct proximately causing the death of John was greater than John's contributory negligent conduct and in fixing the State's liability for damages at $50,000. By this verdict, Eileen established that Hall's monetary obligation to her by reason of his negligence was $50,000.

The Court properly adopts the determination of the trial court that, because Eileen's action against Thomas Thurlow was an independent tort from the tort forming the basis of her cause of action against Hall, 14 M.R.S.A. § 163 has no application to this case. Nothing in the statutes or in the case law of this State allows the court to reduce the amount for which Hall is liable by reason of the independent tort of his negligent representation of Eileen by the amount Eileen recovered from Thurlow.[1] Any monies received by Eileen from Thomas Thurlow based on a tort independent of the tort in the present action was an independent source of compensation to Eileen. The applicable law governing the instant case was clearly stated by the Court in *Potvin v. Seven Elms, Inc.,* 628 A.2d 115 (Me.1993):

> We have previously held that under the collateral source rule, a plaintiff who has

1. *Moores v. Greenberg,* 834 F.2d 1105 (1st Cir. 1987); *O'Neil v. Vasseur,* 118 Idaho 257, 796 P.2d 134, 139–40 (Ct.App.1990); and *Kay v.*

*Bricker,* 485 So.2d 486, 487 (Fla.Dist.Ct.App. 1986), cited by the Court clearly are not applicable to the facts of the present case.

been compensated in whole or in part for his damages by a source independent of the tortfeasor is nevertheless entitled to a full recovery against the tortfeasor. *Werner v. Lane*, 393 A.2d 1329, 1335 (Me.1978). The premise underlying this rule is that either the injured party or the tortfeasor will receive a windfall if part of a loss is paid by an independent source, and, as between the injured party and the tortfeasor, the injured party should reap the benefit of the windfall. *Id.* at 1335–36.

*Id.* at 116.

Here, the full recovery against the tortfeasor was $50,000. By its decision, the Court has erroneously allowed Hall, the tortfeasor in this case, to "reap the benefit" of the amount recovered by Eileen from a source independent of that tortfeasor. I would vacate the judgment and remand this case to the Superior Court for an entry of a judgment in the amount of $50,000 in favor of Eileen.

LIPEZ, Justice, dissenting.

I must respectfully dissent because the trial court's decision in the case within a case to preclude the jury from apportioning fault for the fatal accident among the State, Thurlow and John was an error of law.[1] When defendant Hall committed malpractice, Eileen lost the opportunity to bring a lawsuit against Thurlow and the State as joint tortfeasors. In such a lawsuit, the State would almost surely have brought a cross claim against Thurlow for contribution. Even if Eileen had entered into a settlement with Thurlow prior to trial, she would have known that the State would probably insist that the issue of Thurlow's fault should go to the jury for the purpose of apportioning responsibility for the accident. She would have been entitled to consider these tactical realities in deciding to settle with Thurlow.

In this case, Thurlow and Hall are not joint tort-feasors. Although Hall is a defendant instead of the State because Hall's malpractice precluded a claim by Eileen against the State, Hall could not file a cross claim against Thurlow. Since the determination by the jury of Thurlow's proportionate responsibility for the fatal accident does not serve Hall's purposes, Hall has used the settlement between Eileen and Thurlow as a basis for keeping the jury from formally evaluating Thurlow's responsibility for the accident on a verdict form. Instead, John and Ware, the state employee, became the focus of the fault allocation analysis. This position penalizes Eileen for settling with Thurlow and permits Hall to gain a procedural advantage in this lawsuit from his own malpractice. That result is unwise as policy (we should encourage settlements) and patently unfair.[2]

It is also troubling that Hall, having kept the issue of Thurlow's negligence from formally going to the jury, proceeded to argue Thurlow's negligence to the jury in great detail.[3] Although the jury still concluded

---

1. Although the trial court indicated in its decision denying the motion for a new trial that plaintiff did not press this issue at trial, a review of the record indicates that Hoitt has preserved this issue for appeal.

2. The court states that Eileen's own tactical decision deprived her of the opportunity to present Thurlow's negligence to the jury. I disagree. That statement fails to recognize that the case within a case (*Hoitt v. Thurlow and the State of Maine*) is a different case than this case (*Hoitt v. Thurlow and Hall*). The dismissal of Thurlow from this case because of the settlement with Eileen was irrelevant to the status of Thurlow in the case within a case. In that case, Eileen was entitled to present to the jury the case she was virtually assured of presenting before Hall committed malpractice. In this case, Eileen was entitled to settle with Thurlow without any effect on the lineup of the parties in the negligence case she was never able to file because of Hall's

malpractice. Having injured Eileen once with his malpractice, Hall should not have been allowed to injure her again with a trial tactic made possible by that same malpractice.

3. Counsel for Hall argued to the jury as follows:

We are not here to determine what fault—what other fault was responsible, we are here to determine the actions, we are here to consider the actions of everyone, not only of Mr. Hoitt and not only Mrs. Ware but we are also here to consider what condition the vehicle was and whether that contributed to the accident ... [w]e don't consider this case in a vacuum, you consider what factors contributed to this accident, all of the factors, all of the conditions. And again:

What about the other factors? What about the condition of this pickup truck? All of the testimony seems to suggest from the trooper ... that the main contributing factor for this

that Ware was more responsible for the fatal accident than John, the jury substantially reduced the recoverable damages because of John's comparative negligence. While I understand that juries are told to reduce damages for comparative negligence by dollars and cents and not by a percentage, 14 M.R.S.A. § 156 (1980), I believe that the inability of the jury to assign a percentage of fault to Thurlow may well have magnified its view of John's share of responsibility for the accident. With Thurlow formally removed as a player in the accident, John became a surrogate for Thurlow in the sense that he was the only party to whom the jury, in reaching its verdict, could assign responsibility for the condition of the car. Hall invited the jury to make such an assignment ("You don't charge Mrs. Ware with the negligence of Mr. Thurlow.") without Eileen having the opportunity to argue that the jury could formally assign much of the responsibility to Thurlow. The judgment should be vacated and the case remanded for a new trial.

accident was the defective condition of that vehicle and that braking system ... These were not good brakes. They were bad brakes. This was not a good vehicle. It was a bad vehicle and it wasn't—as Mr. Greif said, it wasn't fit to be on the road. And he's right. It wasn't fit to be on the road. Well, who put it on the road? Or who allowed it to be put on the road? Mr. Thurlow. Mr. Thurlow attached a phony inspection sticker—

And again:

He [Mr. Thurlow] knew the vehicle was in a defective condition, he knew the vehicle or should have known that the brakes on this vehicle were not functioning properly. I asked him, you will recall, whether the brakes were spongy, and he did not deny it, or if he did, he certainly hesitated when he said it, but he clearly seemed uncomfortable by the question.

And again:

Now, who's responsible for that automobile? The pickup truck? *Mr. Thurlow is clearly. You don't charge Mrs. Ware with the negligence of Mr. Thurlow.* Mr. Greif's argument is if

those brakes were faulty, Mr. Hoitt didn't know it. Well, sure as—sure as we can be, Mrs. Ware didn't know it and we're comparing now, we're comparing the conduct and finding out whether she was negligent, whether Mrs. Ware was negligent. We're comparing the conduct of Mr. Hoitt and what he knew and what he ought to know or—ought to have known and what he did and the actions he took with what she did. And I suggest to you that unfortunately when you do that comparison, there is no contest. Because Mrs. Ware I suggest was not negligent, even if you conclude that she was negligent, when you compare the conduct of Mr. Hoitt, his negligence is at least equal to hers, at least, and I suggest possibly greater. He might have a good case—they might have a good case against Mr. Thurlow, probably do, but they don't have a valid claim against Mrs. Ware under our law in the State of Maine.

As a factual matter, there is no question that Thurlow's role in this event was explored fully with the jury.