**Doris JACKSON and Percy Jackson**

v.

**FREDERICK'S MOTOR INN**

v.

**SARAH COVENTRY, INC.**

Supreme Judicial Court of Maine.

Argued March 14, 1980.

Decided Aug. 12, 1980.

Stewart, Griffiths, Quigley & Edgar, David J. Edgar (orally), Houlton, for plaintiff.

Ellsworth T. Rundlett, II (orally), Portland, Ferris A. Freme, Caribou, for Frederick's Motor Inn.

Before GODFREY, NICHOLS and GLASSMAN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

An Aroostook County jury, following a 2–day trial held on May 16 and 17, 1979, returned a verdict in favor of the plaintiff Doris Jackson against the corporate defendant, Frederick's Motor Inn (hereinafter referred to as Frederick's) in the total amount of $25,000.00, which would have been recoverable if the plaintiff had not been at fault, but reduced to the sum of $10,179.00, which the jury thought just and equitable having regard to the plaintiff's share in the responsibility for the damage, all pursuant to 14 M.R.S.A. § 156 (the Maine Comparative Negligence Act). At the close of the evi-

dence, the presiding Justice ordered directed verdicts in favor of the third party defendant, Sarah Coventry, Inc., and in favor of Frederick's as to the plaintiff husband, Percy Jackson. Judgment was entered against Frederick's on May 17, 1979. On May 23, 1979 Frederick's filed a motion with the Court urging it to set aside the verdict and the judgment entered thereon and to direct the entry of judgment in accordance with Frederick's motion for a directed verdict previously made at the close of all the evidence, which had been denied, or, in the alternative, for a new trial. This motion was also denied in due course and the instant appeal was timely taken. We affirm the judgment.

1. *Sufficiency of the evidence.*

The defendant contends, in its first claim of error, that its motion for a directed verdict as to the plaintiff Doris Jackson should have been granted, because the evidence as a matter of law failed to establish negligence on the part of Frederick's. Specifically, it is argued, the evidence was contradictory and the plaintiff's testimony was essentially uncorroborated. We disagree. The defendant's argument, as articulated in its brief, focusing as it does on the weight of the evidence rather than on the absence thereof, is self-defeating.

In *Lyman v. Bourque*, Me., 374 A.2d 588 (1977), a case where the comparative negligence statute was applicable, this Court held that the rule which prevailed prior to the enactment of the statute in determining whether to grant a defendant's motion for a directed verdict remained operative thereafter. The rule is that a directed verdict for a defendant should not be granted, if the evidence together with every reasonable inference arising therefrom, when viewed in the light most favorable to the plaintiff, presents a proper issue for jury determination.

Credibility of the evidence and resolution of inconsistencies or conflicts in the testimony of witnesses ordinarily point up jury questions. We quote again from *Avery v. Brown*, Me., 288 A.2d 713, 715 (1972), as we did in *Binette v. Deane*, Me., 391 A.2d 811, 814 (1978):

Where the evidence . . . discloses that two arguable reasonable theories were presented to the jury for adoption, both being sustained by credible evidence, and one is reflected in the verdict, it would have been an abuse of discretion for the Justice below to override the jury decision and set aside the verdict. The degree of credibility to which witnesses are entitled is for the jury and not the court to decide.

The jury on the evidence in this record was entitled to find the following facts. On the evening of March 22, 1976, Doris Jackson and her daughter attended a Sarah Coventry party at Frederick's, a motel-restaurant complex located in Caribou. At the conclusion of the party, Mrs. Jackson went to retrieve her coat from the cloakroom. While passing through the lobby of the inn, which was crowded with people leaving the party, she was shoved forward by an unidentified person causing her to stumble over a hardwood chair located there and to fall to the floor. Persons in charge at Frederick's, with the permission of Mrs. Jackson's daughter, moved her to a nearby booth from which she was transported shortly thereafter to Cary Memorial Hospital in Caribou. It was then determined that Mrs. Jackson had sustained an impacted fracture of the neck of the left femur. There was evidence before the jury which revealed that Mrs. Jackson was suffering from a severe diabetic condition, had hypertension, was prone to dizzy spells and had undergone eye surgery because of retinopathy, a disease of the retina of the eye.

Mrs. Jackson in her complaint alleged that Frederick's was negligent in allowing its premises to be overcrowded, in permitting the chair against which she was caused to tumble to be there, and in the way its servants rendered aid to her after the fall.

Our review of the evidence compels the conclusion that it was a proper question to be left for jury determination under 14 M.R.S.A. § 156: first, whether Frederick's, as operator of the inn, was

guilty of causative fault in connection with the plaintiff's injury, *i. e.* guilty of negligence toward the plaintiff invitee in its failure to exercise reasonable care to ensure that its premises were reasonably safe for use by the plaintiff in the circumstance of the large group of exiting patrons and the obstructing chair, as well as in the furnishing of aid to the plaintiff following her accident; secondly, whether the plaintiff herself was guilty of causative fault contributing to her injury; and, thirdly, if the plaintiff's injury resulted partly from her own fault and partly from the fault of Frederick's, whether the plaintiff's causative fault was equal to or greater than the causative fault of the defendant Frederick's. *Souza v. Bangor Hydro-Electric Company,* Me., 391 A.2d 349 (1978); *Libby v. Legrow,* Me., 400 A.2d 381 (1979). The jury was warranted in finding that the plaintiff, notwithstanding her physical debilities, was making a legitimate use of Frederick's premises when she was proceeding on her way to the cloakroom and that any causative fault on her part in not anticipating the squeezing, jostling and pushing of the exiting crowd and in not observing the obstructing chair could rationally be considered lesser in its causational effect in bringing about her injury than Frederick's causative fault in not foreseeing the unruly departure of this large group of patrons anxious to leave the premises and in not removing a piece of furniture that impeded the movement of a great number of people.

2. *Legality of reduced verdict returned by the jury under the statutory standard of just and equitable.*

The defendant contends, in its second claim of error, that its motion for a new trial should have been granted, because the jury verdict as reduced is illegal on its face, reflecting, so it asserts, either a compromise on the issue of liability, or prejudice or sympathy, or a lack of understanding of the Court's charge or a misconception of said charge and the rules of comparative negligence. These several articulated grounds of attack upon the ultimate jury verdict arise out of the fact that the jury reduced the original total damages of $25,000.00, found recoverable by the plaintiff if she had not been at fault, to an amount less than fifty percent thereof; an indication, so the defendant argues, that the jury must have concluded in the first place that the plaintiff's causative fault was greater than the causative fault of the defendant, and that its favorable verdict for the plaintiff was due to prejudice or misconception of the law. We disagree.

▮▮▮▮ Under the Maine Comparative Negligence Act, 14 M.R.S.A. § 156, a claimant whose injuries result partly from his own and partly from another's causative fault is not, by reason of the fact that the claimant's own fault contributed to his own injury, excluded from the recovery of some damages, *unless such claimant is found by the jury to be equally at fault.* But, if the claimant's causative fault is found to be less than the causative fault of the other party, then the damages recoverable in respect to the claimant's injury under such circumstances shall be reduced, so the statute says, from the total damages which would have been recoverable if the claimant had not been at fault "to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage."

Fault, within the meaning of the Act, is defined as "negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence."

▮▮▮▮ As the extensive analysis of the statute developed in *Wing v. Morse,* Me., 300 A.2d 491 (1973) indicates, the proper application of the Maine Comparative Negligence Act requires that a jury, in deciding a tort-related case, process the evidence through two separate and distinct procedures, the first which may be viewed as the liability phase of the process, and the second phase which involves the just and equitable apportionment of the damages between mutually blameworthy parties.

The Act, entitled comparative negligence, demands from the jury that the respective fault of the parties be compared both in the liability phase of the process as well as in the apportionment-of-the-damages phase, but under different microscopic lenses. See *George v. Guerette*, Me., 306 A.2d 138, 144 (1973).

In the liability phase the comparison must focus solely upon the legal causative contributing effect of the respective fault of the parties to the claimant's injury. The jury must initially measure the quantum of the causative impact of the improper conduct of the parties to determine whether the defendant must respond in damages to any degree, which the Maine Act conditions on a finding by the jury that the claimant is not equally at fault.

We recognize that the quantifying of fault for the purpose of measuring the same to determine whether it is equal or whether the improper conduct of the plaintiff is greater than that of the defendant may at times become an extremely difficult task. Court instructions providing specific guidance to juries in that area may not be readily articulable. As stated in *Brown v. Haertel*, 210 Wis. 345, 244 N.W. 630, 632 (1932):

> When two persons are negligent and injury to one proximately results from the combined negligence of both, it must often be a very delicate and difficult question to decide whether the negligence of one was greater than that of the other, and contributed in a greater degree to produce the injury. There is no yardstick with which to measure the two acts of negligence, nor scales with which to weigh them.

The greater fault does not necessarily depend upon the greater number of individual negligent acts. *State v. Kaatz*, Alaska, 572 P.2d 775, 782 (1977).

And, in comparing the relative fault of parties giving rise, in the case of defendants, to liability in tort and, in the case of claimants, to the former defense of contributory negligence in order to determine whether the claimant's fault is equal to or greater than that of a defendant as required by the Act, the jury must consider in its assessment of causative fault the several degree factors which lie in the range of fault-conduct from trivial inadvertence to the grossest recklessness. See *Wing v. Morse*, supra, at 500. This will involve consideration of the nature and character of the conduct, its intensity or degree of deviation from correct behavior, its directness and remoteness, in other words, the degree of effectiveness it bears in the causality of the injury sustained.[1] See *State v. Kaatz*, supra.

We have said previously that it was a question for the jury in the instant case to assess the relative causative fault of the parties in connection with the liability aspect in this cause of action and that there was no error at that point in finding that Frederick's causative fault was greater than that of the plaintiff in the resulting injury to Mrs. Jackson.

The real issue in this appeal is whether the jury strayed from the legal path when

---

1. Although the Uniform Comparative Fault Act is a "pure-type" of comparative negligence legislation, the Commissioner's Comment to Section 2 of the Act may be of interest in connection with the above discussion.

   *Percentages of fault.* In comparing the fault of the several parties for the purpose of obtaining percentages there are a number of implications arising from the concept of fault. The conduct of the claimant or of any defendant may be more or less at fault, depending upon all the circumstances including such matters as (1) whether the conduct was mere inadvertence or engaged in with an awareness of the danger involved, (2) the magnitude of the risk created by the conduct, including the number of persons endangered and the potential seriousness of the injury, (3) the significance of what the actor was seeking to attain by his conduct, (4) the actor's superior or inferior capacities, and (5) the particular circumstances, such as the existence of an emergency requiring a hasty decision.

   \*     \*     \*     \*     \*     \*

   In determining the relative fault of the parties, the fact-finder will also give consideration to the relative closeness of the causal relationship of the negligent conduct of the defendants and the harm to the plaintiff.

it reduced the basic damage award of $25,-000.00 to $10,179.00. After examining the entire record, we are not left with the definite and firm conviction that prejudicial error was committed in this case or that the ultimate jury verdict was tainted with illegality because of prejudice or jury misconception of the law, and that a new trial is required. For that reason the judgment below is being affirmed.

■ Once the defendant's liability has been determined after the jury's comparison of the relative causative fault of the parties, the jury then must, pursuant to the provisions of the statute, in the apportionment-of-the-damages phase of their deliberations, reduce "the total damages by dollars and cents, and not by percentage, to the extent deemed just and equitable, having regard to the claimant's share in the responsibility for the damages."

■ The paramount purpose of the statutory mandate is the achievement of justice and equity between the parties under all the circumstances of the case. The relative fault of the parties as determined in connection with the liability issue is, of course, a relevant factor which may be considered by the jury in its apportionment of the damages. But it is not conclusive.

■ Where justice and equity is, by the statute, made the ultimate standard upon which the jury is directed to focus their attention in the apportionment of damages, the blameworthiness of the respective fault of the parties may take on added significance. The statutory caveat that the jury have regard to the claimant's share in the responsibility for the damages in reaching a just and equitable assessment does not require an apportionment of equal mathematical proportion as the jury may have viewed the parties' causative fault in determining the liability issue, but merely directs that consideration should be given to that particular factor with such weight or significance given to it as under all the circumstances it · should merit. *United States v. Interstate Commerce Commission*, 66 App.D.C. 398, 88 F.2d 780, 783 (1937). See *Roberts v. Smith,* Me., 415 A.2d 1089 (June 30, 1980); *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 150–151, 61 S.Ct. 524, 535, 85 L.Ed. 624 (1941); *Sullivan v. Boeing Aircraft Co.*, 29 Wash. 397, 187 P.2d 312, 315–316, 174 A.L.R. 566 (1947).

■ The terms "just" and "equitable" in the context of this statute evoke a concept of fairness, which will be grounded in the precepts of the conscience of the community represented by the jury and which the jury in the exercise of a sound discretion will implement by the apportionment of damages between the parties in such proportion as fairness would dictate under all the circumstances of the case. The jury, here, could take into consideration the physical debilities of the plaintiff as a mitigating circumstance in evaluating the defendant's fault for purposes of damage apportionment.

■ Each case must turn on its own facts and the jury as triers of the facts must apply its ordinary human experience to the facts revealed by the evidence.

■ Once the defendant's liability is established, it is solely the fact-finder's prerogative to reduce the amount of damages recoverable within the statutory concept. See *Souza v. Bangor Hydro-Electric Co.*, Me., 391 A.2d 349, 353, n.1 (1978); *Lyman v. Bourque*, supra; *Wing v. Morse*, supra.

■ We conclude that the reduction of the total damage award by more than one half was not error.

The entry will be:

Appeal denied.

Judgment affirmed.

All concurring.