Jeannine **PELLETIER** et al.

v.

**FORT KENT GOLF CLUB.**

*Supreme Judicial Court of Maine.*

Argued March 30, 1995.

Decided July 19, 1995.

Maxine Paul Pouravelis (orally), Calkins & Pouravelis, Portland, for plaintiffs.

Brian L. Champion (orally), Friedman & Babcock, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Jeannine Pelletier and Gerard Pelletier appeal and the Fort Kent Golf Club cross-appeals from a judgment entered in the Superior Court (Cumberland County, *Wernick, A.R.J.*) on a jury verdict awarding Jeannine $40,000 in damages on the Pelletiers' complaint against the Club for injuries sustained by Jeannine and awarding no damages to Gerard for his claimed loss of consortium. The Pelletiers contend that because the damage award to Jeannine violates the provisions of 14 M.R.S.A. § 156 (1980) and the jury's failure to award damages to Gerard was without rational explanation, the trial court abused its discretion in denying their motion for a new trial. Further, they contend that the obvious error in the trial court's instructions to the jury requires a new trial. The Club contends that the trial court erred in denying its motion for a judgment as a matter of law. We affirm the judgment.

At the trial the following evidence, *inter alia*, was submitted: Crossing the first fairway of the Club's nine-hole golf course are railroad tracks that are elevated approximately two feet above the fairway. The tracks can be seen from the first tee, and are depicted on the Club's scoring cards and on a sign at the first tee. The Club has a "free lift" rule that allows a golfer whose ball lands near the tracks to place the ball across the tracks. The "free lift" area is designated by red markers approximately fifteen feet from the tracks. The parties stipulated that the Bangor and Aroostook Railroad Company owns the tracks, the land on which they are situated, and a strip of land that extends 33 feet on either side of the tracks.

On September 6, 1985, the Pelletiers played golf at the Club where Jeannine had played approximately 20 times previously. On the first hole, Jeannine's second shot landed approximately 43 feet from the tracks. Jeannine's next shot ricocheted off the tracks, hit her in the face, and injured her nose and face.

At the close of the Pelletiers' case, the Club moved for a judgment as a matter of law, contending that it owed no duty to Jeannine because it neither owns the railroad tracks nor the land on which they are situated. The trial court denied the motion. By a special verdict form, the jury found that (1) the Club was negligent, (2) Jeannine was negligent, (3) Jeannine's negligence was not equal to or greater than the negligence of the Club, (4) Jeannine's total damages were $250,000 and (5) Jeannine's total damages were to be reduced to $40,000. No damages were awarded to Gerard for loss of consortium. After a hearing, the trial court denied the Pelletiers' motion for a new trial or, in the alternative, for an addition to the damage award to Jeannine and an award of damages to Gerard. From the judgment entered in accordance with the verdict, the Pelletiers appeal, and the Club cross-appeals.

I.

We first address the Club's cross-appeal, contending that the trial court erred in denying its motion for a judgment as a matter of law. Relying on *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303 (Me. 1991), the Club argues that it owed no duty to Jeannine because the tracks are not located on its property. We disagree.

"Whether one owes a duty of care to another is a matter of law." *Morrill v. Morrill*, 616 A.2d 1272, 1274 (Me.1992). A business owner has a general duty to exercise reasonable care to prevent injury to business invitees. The duty owed to one lawfully on

the premises is "to use ordinary care to ensure that the premises were reasonably safe for the plaintiff, guarding him against all reasonably foreseeable dangers, in light of the totality of the circumstances." *Baker v. Mid Maine Medical Ctr.*, 499 A.2d 464, 467 (Me.1985). The duty owed to business invitees can extend "beyond the precise boundaries of the premises under [the invitor's] control or occupancy to include the approaches which they are expressly or impliedly invited to use or which they would be reasonably expected to use, even though these approaches be not under the invitor's absolute control." *Libby v. Perry*, 311 A.2d 527, 535 (Me.1973).

In *Quadrino v. Bar Harbor Banking & Trust Co.* the plaintiff tripped on a curb that was not located on the property of the defendant bank and landed on the bank's property. In concluding that the bank owed no duty to the pedestrian because it had no possessory interest in the curb, we stated:

> In determining whether a defendant owed a duty of care and may be liable for defects in land causing injury, the court must first establish that the defendant was, in fact, the possessor of the land at the time of the injury. A possessor of land is one who, by occupancy, manifests an intent to control the land.

*Quadrino*, 588 A.2d at 305 (citations omitted).

In the present case, the Bangor and Aroostook Railroad Company owns the tracks and the underlying and the abutting land. The Club, however, "possesses" the tracks because, unlike the defendant in *Quadrino*, the Club manifested an intention to have control over the land on which the defect was located. The Club instituted the "free lift" rule and invited golfers to use the course, which necessarily involved traversing the tracks. Although the tracks are not under the Club's absolute control, the Club's duty extends to land which it has invited golfers to use. *Libby*, 311 A.2d at 535–36. Therefore, the trial court properly denied the Club's motion for a judgment as a matter of law.

## II.

The Pelletiers first contend that because 14 M.R.S.A. § 156 [1] requires damages awarded be in direct proportion to the percentage fault of the parties, the trial court abused its discretion in denying their motion for a new trial on the issue of the damages to be awarded Jeannine. They contend that because in *Jackson v. Frederick's Motor Inn*, 418 A.2d 168 (Me.1980), the jury made only a small deviation between apportionment of fault and apportionment of damages, that case can be distinguished from the present case. We disagree.

The Legislature first enacted a comparative negligence statute in 1965. P.L.1965, ch. 424.[2] That statute was modeled after an

---

1. 14 M.R.S.A. § 156 (1980) provides:

    Where any person suffers death or damage as a result partly of his own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.

    Where damages are recoverable by any person by virtue of this section, subject to such reduction as is mentioned, the court shall instruct the jury to find and record the total damages which would have been recoverable if the claimant had not been at fault, and further instruct the jury to reduce the total damages by dollars and cents, and not by percentage, to the extent deemed just and equitable, having regard to the claimant's share in the responsibility for the damages, and instruct the jury to

    return both amounts with the knowledge that the lesser figure is the final verdict in the case.

    Fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.

    If such claimant is found by the jury to be equally at fault, the claimant shall not recover.

    In a case involving multi-party defendants, each defendant shall be jointly and severally liable to the plaintiff for the full amount of the plaintiff's damages. However, any defendant shall have the right through the use of special interrogatories to request of the jury the percentage of fault contributed by each defendant.

2. P.L.1965, ch. 424 provided in pertinent part:

    Where damages are recoverable by any person by virtue of this section subject to such reduction as is mentioned, the jury shall find and

English statute passed in the Law Reform Act of 1945. *See Wing v. Morse,* 300 A.2d 491, 497 (Me.1973); 2 Legis.Rec. 2589 (1965) (statement of Rep. Berman). In 1969, by P.L.1969, ch. 399, § 1, the Legislature amended the comparative negligence statute to provide in pertinent part:

> Where damages are recoverable by any person by virtue of this section, subject to such reduction as is mentioned, the court shall instruct the jury to find and record the total damages which would have been recoverable if the claimant had not been at fault, *and further instruct the jury to reduce the total damages by dollars and cents, and not by percentage, to the extent deemed just and equitable, having regard to the claimant's share in the responsibility for the damages,* and instruct the jury to return both amounts with the knowledge that the lesser figure is the final verdict in the case.

14 M.R.S.A. § 156 (1980) (emphasis added). There is no statement of fact or legislative debate concerning the change.[3] The above-quoted portion of the statute has not been amended since it was enacted in 1969.[4]

■ In construing a statute, we first look to the plain meaning of the statutory language to give effect to the legislative intent. *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994). If the meaning of the statute is clear, then we need not look beyond the words of the statute. *Estate of Stone v. Hanson,* 621 A.2d 852, 853 (Me. 1993). We will examine other indicia of legislative intent if the statutory language is ambiguous. *Jordan,* 651 A.2d at 360.

■ The plain meaning of the statutory language allows a jury to award damages in disproportion to its determination of liability.

Section 156 not only provides that the jury should reduce the damage award "to the extent deemed just and equitable," it also dictates that the jury should not be governed by percentages in reducing a damage award. Further, the statute provides that the jury have "regard" to the plaintiff's share of responsibility and not, as urged by the Pelletiers, that the jury's reduction of the damage award be in direct proportion to the plaintiff's share of responsibility. Thus, what a jury deems "just and equitable" does not have to be proportionate to the claimant's fault.

Maine's statute differs from the comparative negligence statutes of other jurisdictions. The other statutes expressly reduce the amount of damages by the plaintiff's proportionate share of negligence. For example, the Massachusetts comparative negligence statute provides that "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made." Mass.Gen.Laws Ann. ch. 231, § 85 (1986). Moreover, at the time Maine adopted its statute, other states had statutes that stipulated a plaintiff's damages shall be reduced in the proportion to the plaintiff's contributory negligence. *See Wing,* 300 A.2d at 498, n. 4 & n. 5 (quoting statutes of Wisconsin and Arkansas). Therefore, the Legislature was aware of language that would require that a plaintiff's damage award be reduced in direct proportion to the plaintiff's own negligence, but it elected not to do so. We conclude that pursuant to section 156, a jury is not required to award damages in proportion to the causative fault of the parties.[5]

---

record the total damages which would have been recoverable if the claimant had not been at fault and the extent to which those damages are to be reduced.

**3.** Prior to the amendment, the trial court's practice had been to use a special verdict form instructing the jury to find the total damages and assign percentages of fault to the parties. Thereafter, the trial court, when applicable, made a percentage reduction of the total damages without advising the jury.

**4.** A change was made to section 156 in 1971 when the Legislature deleted a sentence from the statute, *see* P.L.1971, ch. 8, but that change is not germane to this appeal.

**5.** We are unpersuaded by the Pelletiers' argument that the legislative debate from 1965 demonstrates that a jury must award damages in direct proportion to the percentage of the defendant's fault. Not only is that contrary to the plain language of section 156, but the legislative history from 1965 does not control the interpretation of statutory language enacted in 1969.

Our previous interpretation of section 156 in *Jackson v. Frederick's Motor Inn,* 418 A.2d 168 (Me.1980), is consistent with our conclusion that the damage award in the instant case does not violate section 156. In *Jackson,* the jury determined that both parties were at fault, found total damages of $25,000, and reduced the award to $10,179. Asserting that the jury verdict was facially illegal because it reflected compromise, prejudice, or misunderstanding of the law, the defendant contended that the verdict indicated that the jury must have concluded in the first instance that the plaintiff's causative fault was greater than that of the defendant, thereby barring any recovery by the plaintiff. *Id.* at 172. We rejected the defendant's contention and interpreted section 156 to require the jury to compare the respective fault of the parties in two separate phases: the liability phase and the apportionment-of-the-damages phase. *Id.* at 173–74. We stated:

The paramount purpose of the statutory mandate is the achievement of justice and equity between the parties under all the circumstances of the case. The relative fault of the parties as determined in connection with the liability issue is, of course, a relevant factor which may be considered by the jury in its apportionment of the damages. But it is not conclusive.

Where justice and equity is, by the statute, made the ultimate standard upon which the jury is directed to focus their attention in the apportionment of damages, the blameworthiness of the respective fault of the parties may take on added significance. The statutory caveat that the jury have regard to the claimant's share in the responsibility for the damages in reaching a just and equitable assessment does not require an apportionment of equal mathematical proportion as the jury may have viewed the parties' causative fault in determining the liability issue, but merely directs that consideration should be given to that particular factor with such weight or significance given to it as under all the circumstances it should merit.

*Id.* at 174 (citations omitted).

Accordingly, the trial court properly denied the Pelletiers' motion for a new trial based on their contention that the jury verdict violated section 156.

### III.

The Pelletiers next contend that because there is no rational explanation for the jury's decision not to award any damages to Gerard on his claim for loss of consortium, the jury must have disregarded the evidence or been under a mistake of law, and accordingly, the trial court abused its discretion in denying their motion for a new trial. We disagree.

■ The claim for loss of consortium addresses interference "with the continuation of the relation of husband and wife." *Sawyer v. Bailey,* 413 A.2d 165, 167 (Me.1980). Whether there has been such interference is a question of fact to be determined by the fact finder. A spouse may not recover unless there was an actual loss of services or affection. W. Page Keeton *et al., Prosser and Keeton on the Law of Torts,* § 125, at 932–33 (5th ed. 1984).

■ We will not " 'set verdicts aside on the ground that the damages are excessive or inadequate unless it is apparent that the jury acted under some bias, prejudice or improper influence, or have made some mistake of fact or law.' " *Chenell v. Westbrook College,* 324 A.2d 735, 737 (Me.1974) (quoting *Cayford v. Wilbur,* 86 Me. 414, 416, 29 A. 1117 (1894)). The party moving for a new trial has the burden to establish that the verdict is improper. *Chiapetta v. Lumbermens Mutual Ins. Co.,* 583 A.2d 198, 201 (Me.1990).

■ A jury's determination of the amount of damages should only be disturbed by the trial court if "reasonable men will agree that the jury's finding is irrational on the basis of the evidence considered in a light most favorable to the party against whom the motion to set aside the verdict is pressed." *Chenell,* 324 A.2d at 737. We have previously stated that "[a]ssessment of damages is the sole province of the jury, and its award will stand in the absence of a demonstration that it acted improperly. Even when the jury awards no damages at all, its assessment will not be set aside if it is supported by credible evidence." *McLellan v. Morrison,* 434 A.2d 28, 30 (Me.1981) (citations omitted).

There is no indication in this record that the jury engaged in misconduct, acted improperly or made some mistake of fact or law. On the evidence before it, the jury properly could have concluded that as a result of the injuries sustained by his wife Gerard suffered no loss of continuation of relationship with her. The trial court did not abuse its discretion by denying the Pelletiers' motion for a new trial based on their contention that the jury should have awarded damages to Gerard.

### IV.

Finally, and for the first time, the Pelletiers contend the trial court's instructions to the jury on the issue of damages, if any, to be awarded Jeannine require a new trial. To support their contention, they point to two isolated phrases taken out of context, as the court explained the special verdict form to the jury.

 When, as here, there was no objection at the trial to the court's instructions to the jury, we review the instructions in their entirety for obvious error. *Baker v. Jandreau,* 642 A.2d 1354, 1355 (Me.1994); M.R.Civ.P. 51(b). We will vacate the judgment of the trial court only if (1) the instructions did not sufficiently and fairly inform the jury in all necessary respects of the applicable law and (2) there was an exceptional error in this civil action that has seriously affected the fairness, integrity or public reputation of the proceeding. *Twin Island Dev. Corp. v. Winchester,* 512 A.2d 319, 324 (Me.1986).

A fair reading of the instructions in the present case discloses that the court sufficiently and fairly informed the jury of the applicable law on the issue of damages and that any possible error or confusion in the instructions did not rise to the level of seriously affecting the "fairness, integrity, or public reputation" of this proceeding. *Id.*

The entry is:

Judgment affirmed.

All concurring.