STATE OF MAINE                                    SUPERIOR COURT
OXFORD, ss.                                       Civil Action
                                                  Docket No. CV-09-17
                                                  *RWC - OXF - 5/3/2010*

DARCY LUND,
                        RECEIVED AND FILED
        Plaintiff

            v.                  MAY 3 2010    DECISION AND ORDER

BISCO PROPERTIES, LLC,  OXFORD COUNTY SUPERIOR COURT
                              SOUTH PARIS, MAINE

        Defendant


        This matter is before the court on Defendant Bisco Properties, LLC's Rule 56

motion for summary judgment. For the reasons discussed below, the defendant's

motion is granted.

## I. BACKGROUND

        The facts before the court may be briefly summarized as follows:[1] Plaintiff Darcy

Lund moved into the Hillcrest Apartments, owned by defendant Bisco, on August 4,

2004. Prior to moving in, Lund inspected available apartment number 10 with Anthony

Morra, President of Bisco, and noted a few areas that needed minor repairs. No mold

---

[1] Many of the Plaintiff's opposing statements of material facts do not comply with M.R. Civ. P. 56(h)(4).

> A party's opposing statement of material facts "'must explicitly admit, deny, or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation.'" *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 10, 824 A.2d 48, 52-53 (quoting *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n.5, 770 A.2d 653, 655); *see also* M.R. Civ. P. 56(h)(2). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4).

*Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169, 174. Statements improperly opposed by the Plaintiff are deemed admitted.

was observed in the apartment. Lund rented and lived in apartment 10 from August 4, 2004, through December 7, 2007.

During the time the plaintiff lived in apartment 10, she discovered what she believed to be mold, due to its black appearance and musty odor, in the bathroom. Plaintiff removed the substance with bleach. In the spring of 2007 the plaintiff began complaining of mold to Mr. Morra. Morra inspected the apartment and told the plaintiff he did not believe there was mold in the apartment.

On August 23, 2007, Brhaun Parks of the Maine State Housing Authority inspected certain areas of Hillcrest Apartments, including the plaintiff's apartment. Mr. Parks did not discover any mold in the plaintiff's apartment. On December 11, 2007, Paul Thornfeldt, owner-operator of Western Maine Home Inspection and president of the Maine Coalition of Home Inspectors, inspected apartment 10 to determine the presence or absence of mold in the apartment. He found no signs of any mold in the apartment, but did observe dirty carpeting and baseboards, the cause of which was the failure to regularly clean the apartment.

In December of 2007 the plaintiff refused to pay rent because of her complaints about mold. In an effort to accommodate the plaintiff, Mr. Morra suggested she move to another apartment. On December 8, 2007, the Plaintiff moved from apartment 10 into apartment 17. She lived there until February 24, 2008. The plaintiff did not assert that apartment 17 was unsatisfactory.

Plaintiff left her furniture and other personal property in apartment 10, expecting that Mr. Morra would leave the apartment open to her through December, even though she had not paid December rent for either apartment 10 or apartment 17. Mr. Morra, in order to make apartment 10 ready for other renters, helped the plaintiff remove some of

her furniture and personal property from apartment 10. Plaintiff, however, refused to place her own property from apartment 10 into apartment 17 because she claimed the property was moldy. On December 26, 2007, by which time apartment 10 had been rented, Mr. Morra wrote to plaintiff to notify her that she could no longer store her furniture in apartment 10, that the furniture would be placed in storage, and that she should arrange to remove it by January 31, 2008. Subsequently, some of Plaintiff's things were taken to apartment 17, some to a shed behind the apartments, and some to a storage unit.

Plaintiff did not pay any rent between December 1, 2007, and February 24, 2008. Bisco instituted forcible entry and detainer proceedings against the plaintiff in the District Court, and succeeded in having plaintiff evicted from apartment 17 on February 24, 2008.

In late 2008, Mr. Morra wrote to the plaintiff about her failure to remove her property from storage, and requested that she contact him to advise whether she wanted the property. In October 2008, the plaintiff responded by letter that she wanted the property, but that her attorney would handle its removal. The plaintiff claims that she cannot take or handle the property because it makes her ill. The property is currently still in storage at defendant Bisco's expense.

Plaintiff asserts that she has a history of dizziness, headaches, gastroenteritis, vomiting, exhaustion, blurred vision, and breathing difficulties. She contends that her symptoms worsened while living in Hillcrest, and lessened when she left the Apartment Complex. She contends that mold caused and/or exacerbated her symptoms.

3

The plaintiff filed a four-count complaint on February 25, 2009, alleging (1) unlawful conversion, (2) negligence, (3) unconscionability,[2] and (4) punitive damages. The defendant filed a motion for summary judgment on December 15, 2009. The plaintiff filed an opposition to the motion, with leave from court, on January 15, 2010. The defendant filed a reply on January 29, 2010. Oral argument on defendant's motion for summary judgment was heard on March 17, 2010.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence, considered in the light most favorable to the non-moving party, indicates that no genuine issue of material fact is in dispute." *Blue Star Corp. v. CKF Props. LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270, 1276 (citing *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825; *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169, 174); *see also* M. R. Civ. P. 56. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance Nat'l Indemnity v. Knowles Indus. Servs.*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25.

A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*,

---

[2] The plaintiff did not address her unconscionability claim in her opposition to the defendant's motion for summary judgment, and has otherwise failed to establish a prima facie case for this claim. Accordingly, the defendant's motion for summary judgment as to Count 3 must be granted.

4

2001 ME 158, ¶ 7, 784 A.2d 18, 21-22.

B.    Negligence

To sustain a claim for negligence "a plaintiff must establish a prima facie case showing duty, breach, causation, and damages." *Alexander v. Mitchell*, 2007 ME 108, ¶ 14, 930 A.2d 1016, 1020; *see also Dunham v. HTH Corp.*, 2005 ME 53, ¶ 8, 870 A.2d 577, 579. A party has a duty of care when he or she "is under an obligation for the benefit of a particular plaintiff." *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303, 304 (Me. 1991). Whether a duty of care exists is a legal question. *Pelletier v. Fort Kent Golf Club*, 662 A.2d 220, 222 (Me. 1995). "A defendant is entitled to judgment as a matter of law on a negligence claim if that defendant owes no duty to the plaintiff." *Budzko v. One City Ctr. Assocs. Ltd. Partn.*, 2001 ME 37, ¶ 10, 767 A.2d 310, 313.

The plaintiff argues that, although landlords are generally "not liable to a tenant for personal injuries caused by a defective condition in premises under the tenant's exclusive control," defendant Bisco should be liable because it undertook to repair the mold situation and did so negligently. *See Nichols v. Marsden*, 483 A.2d 341, 343 (Me. 1984).[3]   The defendant contends that there is insufficient evidence to prove (1) there was mold present in the apartment caused by anything other than the actions of the plaintiff; or (2) that any alleged mold caused damage to plaintiff's property or her health.

Even when viewed in a light most favorable to the plaintiff, the evidence is insufficient to prove the existence of harmful mold in her apartment.  The plaintiff

---

[3] *Nichols* established that a landlord may be found liable, even when the premises are under the tenant's exclusive control, under three well-recognized exceptions: where the landlord: "(a) fails to disclose the existence of a latent defect which he knows or should have known existed but which is not known to the tenant nor discoverable by him in the exercise of reasonable care; (b) gratuitously undertakes to make repairs and does so negligently; or (c) expressly agrees to maintain the premises in good repair." *Nichols v. Marsden*, 483 A.2d 341, 343 (Me. 1984) (internal citations omitted).

5

admittedly is not a mold expert, has not consulted with a mold toxicologist, and has not designated an expert to establish the existence of mold in the apartment.

The determination of the presence, amount, type, and toxicity of mold in this case would appear to be beyond common knowledge. Research shows that there are many different types of mold, differing levels of appropriate mold amounts, as well as different recommendations as to how to remediate a mold problem. *See* Maine Indoor Air Quality Counsel, www.miaqc.org.[4]

Plaintiff has failed to designate an expert witness. Further, there is affirmative evidence, through defendant's two experts, that there was no mold, much less harmful mold in plaintiff's apartment. Defendant's evidence is not adequately contradicted. Absent any expert testimony to establish the existence of unhealthy levels of mold in the apartment, plaintiff's evidence is insufficient to support a cause of action in negligence that the plaintiff's damages were legally caused by the defendant. Accordingly, the court GRANTS the defendant's motion for summary judgment as to the negligence claim.

C.    Unlawful Conversion and Punitive Damages

The plaintiff's remaining claims for conversion and punitive damages are based on the allegation of the "destruction of the property by contamination" due to mold exposure. (Pl.'s Opp'n to Def's Mot. Summ. J. at 4.) Because the Plaintiff has failed to

---

[4] In fact, the Maine Indoor Air Quality Counsel suggests "if you suspect mold contamination in the building and are unable to locate it in your walk-through inspection, some testing may be necessary. *This will likely require assistance from a home inspector, construction/building engineer, industrial hygienist or indoor air quality consultant.*" MIAQC Board of Directors, *General Guidance to Determine the Need for Indoor Air Quality (IAQ) Testing*, MAINE INDOOR AIR QUALITY COUNSEL, July 22, 2002, http://www.miaqc.org/Guidance%20for%20IAQ%20Testing.htm (emphasis added); *see also* Bob Stillwell, *Get Rid of Mold*, DEPARTMENT OF ENVIRONMENTAL PROTECTION STATE OF MAINE, September 26, 2003, http://www.maine.gov/tools/whatsnew/index.php?topi=IOB&id=734&v=Article; Indoor Environments Division, *Mold Remediation in Schools and Commercial Buildings*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, June 25, 2001, http://www.epa.gov/mold/pdfs/moldremediation.pdf.

adequately establish the existence of mold, the defendant's motion for summary judgment as to the remaining claims must be granted.

The entry is:

> Judgment for the defendant on all counts of the plaintiff's complaint.

Dated: April 30, 2010

Robert W. Clifford
Active Retired Justice