STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                   Civil Docket


LAURA RHODES, individually
and as personal representative of
the Estate of David Rhodes,

                    Plaintiff

        v.                                        Docket No. CUMSC-CV-18-007

SEGEE REALTY, LLC et als.

                    Defendants

                    SUMMARY JUDGMENT DECISION

This case presents the question whether the owners of a funeral home business

on one side of a public road and an overflow parking lot for the funeral home on the

other side owed a common law duty of care to business invitees who parked in the lot

and were struck by a car as they walked across the road toward the funeral home.

Before the court are Motions for Summary Judgment filed by Defendants Segee

Realty, LLC; Segee Enterprises, Inc. (together "the Segee Defendants") and

Defendants Margaret Dolby and Dolby Family, LLC ("the Dolby Defendants"),

together with the oppositions of Plaintiff Laura Rhodes, individually and as personal

representative of the Estate of David Rhodes, and Defendants' reply memoranda.

The court elects to address the Motions without oral argument. *See* M.R. Civ.

P. 7(b)(7).

FOR THE PLAINTIFF:
REBECCA KLOTZLE, ESQ.
JAMES O'CONNELL, ESQ.

FOR CONCORD GENERAL
JONATHAN BROGAN, ESQ

FOR SEGEE AND DOLBY DEFENDANTS
J WILLIAM DRUARY JR, ESQ.

REC'D CUMB CLERKS OF
APR 19 '19 PM 1:07

Based on the material undisputed facts, this Summary Judgment Decision determines as a matter of law that Defendants' duty of care to Mr. and Mrs. Rhodes did not extend beyond their properties into the public road, and therefore grants summary judgment to the Defendants.

## Background

This case arises from a tragic accident during the evening of January 7, 2016, in which Plaintiff Laura Rhodes and her husband, David Rhodes, were struck by a car as they walked across the River Road in Windham to attend a memorial for a close friend of Laura Rhodes at the Dolby Funeral Chapel.

*1. The Accident Location and Circumstances*

The Rhodeses had parked in a paved parking lot across River Road from the Dolby Funeral Chapel—a parking lot intended for the use of persons coming to the Chapel for memorial services and other events.

The speed limit along that section of River Road is thirty miles per hour, although vehicles are known to travel faster and traffic at times can be heavy.

It was after dark as the Rhodeses began to cross River Road. They got halfway across the two-lane roadway, standing in front of a vehicle that had stopped to allow them to cross. They saw what appeared to be an opening in the oncoming traffic and started to cross the other lane when they were struck by a vehicle operated by Todd Bidwell. Both were seriously injured and David Rhodes later died as a result of his injuries.

2

Dolby Funeral Chapel has been in business at 434 River Road, Windham, Maine since 1953. Beginning in the 1960s, Dolby Funeral Chapel opened the parking lot across River Road, located at 435 River Road, for the use of people coming to the Chapel for memorial services and other events. In 1991, Dolby Funeral Chapel purchased land next to the Chapel at 432 River Road and converted it into a parking lot for the Chapel.

For decades, people visiting the Dolby Funeral Chapel for memorial services and other events have parked in the lot across the road and walked across River Road to the Chapel. At some point in the past, the crossing between the parking lot and the chapel was improved with pedestrian crossing signs in each direction and a painted crosswalk, between the Funeral Chapel and the parking lot across the road. There is no evidence that the moving Defendants put up the signs or painted the crosswalk. In 2015, the Town of Windham repaved that section of River Road and did not repaint the crosswalk. The pedestrian crossing signs remained.

Sporadically in past years, Dolby Funeral Chapel personnel have stood at the crossing point to render assistance to people crossing the road. On the other hand, the Dolby Funeral Chapel has never taken any formal or consistent safety measures for its business invitees crossing River Road between the parking lot and the Chapel. There is also no evidence that the Rhodeses knew of or relied on the sporadic occasions on which Funeral Chapel personnel helped people cross the road.

There are a variety of measures that could be undertaken to make it safer to cross River Road at that location, including crossing guards, pedestrian-activated

3

crosswalk lights, repainting of the crosswalk, and additional pedestrian crossing signs. However, as the Plaintiff's retained traffic safety expert acknowledged at his deposition, all measures for controlling or stopping traffic on the road would have to be implemented, or at least approved, by either the Town of Windham or the Maine Department of Transportation, or both. In other words, it is undisputed that the moving Defendants have never had any right to possess or occupy or control River Road.

*2. History of Ownership*

In 2005, defendant Margaret Dolby and her husband Tim Dolby acquired ownership of Dolby Funeral Chapel and both parking lots located at 432 and 435 River Road.

On December 22, 2015, Defendant Segee Enterprises purchased the Dolby Funeral Chapel business, and Defendant Segee Realty, LLC acquired the parking lot and chapel properties at 432-434 River Road. Defendant Margaret Dolby retained ownership of the 435 River Road parking lot property across the road from the Funeral Chapel, and leased it to Defendant Segee Enterprises for overflow parking.

Defendant Segee Enterprises and Defendant Segee Realty, LLC are owned by Eric Segee. Eric Segee worked at Dolby Funeral Chapel for at least two years prior to his companies' purchase of the Chapel business and property.

## Procedural History

Plaintiff Laura Rhodes filed a complaint on behalf of herself and as the personal representative of her late husband's estate on January 5, 2018, alleging eight counts.

4

Count I was solely against Todd Bidwell, the driver of the vehicle that struck the Rhodeses. Count I has been dismissed and Mr. Bidwell has been dismissed from the case as a party Defendant.

Count II is a breach of contract claim against Plaintiff's insurer, Concord General Mutual Insurance Company, based on the underinsured motorist provisions of Plaintiff's Concord General policy.

Counts III and IV were also asserted against Defendant Concord General, and have been dismissed by stipulation.

The Motions for Summary Judgment before the court pertain to Counts V through VIII. Count V asserts a wrongful death claim; Count VI asserts a claim for conscious pain and suffering; Count VII asserts a negligent infliction of emotional distress claim, and Count VIII asserts a negligence/premises liability claim.

All remaining Defendants except Concord General filed motions for summary judgment in January 2019, which became fully briefed as of March 1, 2019.

The primary issue raised in the summary judgment motions is whether the moving Defendants owed a duty of care to Laura and David Rhodes as they crossed River Road from the parking lot to the Chapel. Defendant Dolby Family, LLC's Motion raises the separate issue of its own liability, given that it was formed after the accident that gives rise to this case.

5

## Discussion

### 1. *Standard of Review*

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *See Savell v. Duddy*, 2016 ME 139, ¶ 18, 147 A.3d 1179.

On summary judgment, the court considers reasonable inferences that may be drawn from the facts. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18. Additionally, the nonmoving party benefits from all "favorable inferences that may be drawn from the facts presented." *Id.* "When facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered." *Id.*

### 2. *Duty of Care Generally*

Plaintiff asserts that Defendants owed the Rhodeses a duty of care that applied to the Rhodeses as business invitees as they crossed River Road. The moving Defendants cannot dispute that the Rhodeses were business invitees, but they do contend that as a matter of law none of them owed a duty of care that extended to business invitees crossing a public road.

6

According to her memoranda in opposition, Plaintiff's position rests upon three alternate theories of liability: (1) premises liability, (2) creating a dangerous condition on land that creates an unreasonable risk of harm to persons outside the land, *see* RESTATEMENT (SECOND) OF TORTS § 364,[1] and (3) general negligence. All three theories of liability sound in negligence, and therefore all presuppose the existence of a duty of care.

"When a plaintiff alleges negligence, to survive a defendant's motion for summary judgment, [the plaintiff] 'must establish a prima facie case for each element of the cause of action.'" *Murdock v. Thorne*, 2017 ME 136, ¶ 11, 166 A.3d 119 (quoting *Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951). To establish a prima facie case of negligence the plaintiff must show "a duty owed, a breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty." *Canney v. Strathglass Holdings, LLC*, 2017 ME 64, ¶ 19, 159 A.3d 330 (quotation marks omitted).

---

[1] Restatement (Second) of Torts section 364, which is discussed below, reads as follows:

A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if

(a) the possessor has created the condition, or

(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or

(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it.

7

Whether a duty exists depends upon whether the defendant is "under any obligation for the benefit of the particular plaintiff." *Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶ 17, 11 A.3d 308 (quotation marks omitted). "Even though the issue is fact driven, the question of duty is a legal question decided by the court, not the jury." *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 9, 118 A.3d 789. Determining whether a duty exists requires the court to conduct a "multi-factored analysis that necessarily evokes policy-based considerations including the just allocation of loss." *Id.*

The key issue in this case is one of control—whether the moving Defendants had a sufficient degree of control over traffic on the River Road to establish a common law duty of care to the Rhodeses as they crossed the road.

As indicated above, Plaintiff's memoranda in opposition propose three alternate grounds for imposing a duty of care on the moving Defendants. Two of the three do not require extended discussion.

Plaintiff's theory under Restatement (Second) of Torts section 364—imposing liability for an artificial dangerous condition on a party's property that causes injury or harm outside the property—does not apply here, *See* RESTATEMENT (SECOND) OF TORTS § 364 ("A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other *artificial condition on the land*, which the possessor realizes or should realize will involve an unreasonable risk of such harm, . . .") (emphasis added). Plaintiffs have not alleged or shown that anything located on the moving Defendants' properties created or constituted an artificial dangerous

8

condition. It is rather the location of the properties on either side of a busy public road that is alleged to create or constitute the dangerous condition.

Plaintiff's theory of general negligence does apply, but in the context of this case, it is not an alternative to the law of premises liability. This is because the Plaintiff's claims are based entirely on the Defendants' ownership and operation of business premises. The law of premises liability is simply a species of the law of negligence. For that reason, Plaintiff's general negligence theory lends no additional support beyond what her premises liability theory provides.

When the plaintiff's claim is based on ownership of property or operation of a business, general negligence still requires a showing that the defendant had control over the circumstances that were the proximate cause of the accident. *See Stewart v. Aldrich*, 2002 ME 16, ¶¶ 11-14, 788 A.2d 603 (landlord did not have control over tenant's dog for purposes of imposing negligence liability for dog bite). Thus, given that Plaintiff's claims are based on the moving Defendants' ownership and operation of business property, general negligence theory is not an alternative ground for liability. If the moving Defendants owed a duty of care to the Rhodeses, it is under the law of premises liability.

3. *Premises Liability*

In Maine, "the owner of business premises owes a legal duty to his business invitees to protect them from those dangers reasonably to be foreseen." *Stanton v. Univ. of Me. Sys.*, 2001 ME 96, 773 A.2d 1045. On a motion for summary judgment, the court is required to "look to general principles of duty, with particular emphasis

9

on the undisputed facts relevant to foreseeability, control, and the relationship of the parties, in determining whether a duty founded on premises liability exists." *Brown*, 2015 ME 75, ¶ 14, 118 A.3d 789.

Plaintiffs were business invitees of defendant Segee Enterprises. (Defs. Segee's Supp.'g S.M.F. ¶ 2.) This relationship satisfies the requirements for a duty based on premises liability. *See Budzko v. One City Ctr. Assocs.*, 2001 ME 37, ¶¶ 11-12, 767 A.2d 310.

The other moving Defendants are (or were) the owners of the two properties. The Dolby Defendants were and are is the lessor of the parking lot located across River Road from Dolby Funeral Chapel. (Defs. Segee's Supp.'g S.M.F. ¶ 19.) "A landlord is generally not liable for a dangerous condition that comes into being after the lessee takes exclusive possession and control of the premises." *Stewart v. Aldrich*, 2002 ME 16, ¶ 10, 788 A.2d 603. Here, however, the alleged dangerous condition—the location of the overflow parking lot across a busy road from the Chapel—came into being while Margaret Dolby and her husband operated the parking lot and the Chapel and before the sale of the Chapel and the Chapel property to the Segee Defendants. Accordingly, this Decision treats the Dolby Defendants as being in the same position as the Segee Defendants in terms of potential premises liability.

As to the foreseeability element of the Plaintiff's premises liability claim, the Plaintiff has plainly presented *prima facie* admissible evidence that this accident was foreseeable. "A consequence of negligence is reasonably foreseeable if the negligence has created a risk which might reasonably be expected to result in the injury or

10

damage at issue, even if the exact nature of the injury need not, itself, be foreseeable." *Merriam v. Wanger*, 2000 ME 159, ¶ 9, 757 A.2d 778.   In this case, there had been two prior accidents in which pedestrians were hit by cars at the same crossing.   The crossing was signaled with pedestrian signs and had been marked with a painted crosswalk prior to the repaving in 2015.   Moreover, there is evidence that the Dolby Defendants had taken steps in the past to help people across the road.

Defendants appear to argue that the accident was not foreseeable, but given the two prior accidents involving pedestrians at the same location, foreseeability is an issue for the factfinder.   However, foreseeability alone is not sufficient to establish a duty of care.   *See Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 14 ("[W]e look to general principles of duty, with particular emphasis on the undisputed facts relevant to foreseeability, control, and the relationship of the parties, in determining whether a duty founded on premises liability exists"}.

For purposes of premises liability, for there to be any duty, it must be shown that the defendant owns, possesses or has some degree of control over the area of the location of the accident: "In determining whether a defendant owed a duty of care and may be liable for defects in land causing injury, the court must first establish that the defendant was, in fact, the possessor of the land at the time of the injury. A possessor of land is one who, by occupancy, manifests an intent to control the land." *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303, 305 (Me. 1991).   It is the element of control over the public road where the accident occurred that is at issue in this case. In *Quadrino*, the Law Court decided that the defendant bank owed no duty of care to

11

a pedestrian who tripped over a curb maintained by the Maine Department of Transportation as he passed by the defendant bank and landed in the bank's driveway. 588 A.2d 303, 304 (Me. 1991). The Law Court reasoned that the defendant bank did not owe the plaintiff a duty of care because the defendant bank did not possess or manifest an intent to control the curb that caused the plaintiff to fall. *Id.* at 305.

As Plaintiff points out, a business invitor may owe a duty to business invitees that extends "beyond the precise boundaries of the premises under [the invitor's] control or occupancy." *Pelletier v. Fort Kent Golf Club*, 662 A.2d 220, 222 (Me. 1995) (quoting *Libby v. Perry*, 311 A.2d 527, 535 (Me. 1973)). In *Pelletier*, the plaintiff was injured by a golf ball that ricocheted off of railroad tracks that crossed the defendant Golf Club's golf course. 662 A.2d at 221. The railroad tracks and land immediately surrounding them were owned by a railroad company and not under the absolute control of the defendant Golf Club. *Id.* at 222. However, the defendant Golf Club had promulgated a special "free lift" rule that allowed golfers to move balls that landed on the railroad tracks and had "invited golfers to use the course, which necessarily involved traversing the tracks." *Id.* The Law Court determined that the defendant Golf Club owed the plaintiff a duty of care even though the railroad tracks involved in the accident were not under the defendant Golf Club's absolute control. *Id.* ("the [defendant Golf Club's] duty extends to land which it has invited golfers to use.").

The *Libby v. Perry* case is not truly a premises liability case, because the defendants were not the owners of the property in question. The defendants were a committee had rented the Augusta Armory for an event, and the plaintiff was an

12

invitee who fell on an unsanded icy area at the bottom of the stairs leading out of the Armory. 311 A.2d 527, 529 (Me. 1973). *Id.* at 535. The accident in *Libby* occurred in a privately owned area that the defendants could have, and in the Law Court's view, should have had sanded. *Id.* at 530 ("[T]e failure in the instant case to take any precautions to protect these guests from the hazardous icy conditions of the exit area amounted to a breach of duty subjecting the defendants to liability for the plaintiff's injuries proximately resulting therefrom"). The Law Court decided that the defendants' duty of care extended beyond the four corners of the Armory building they had rented to "the immediate areaway which the plaintiff business invitee was either invited to use, or which he would be reasonably expected to use, to make his exit from the premises upon which he had been invited to come." *Id.*

Although these three cases are the Maine Law Court decisions arguably most on point, none is controlling here. *Quadrino* is not on point because the plaintiff was a passerby, not a business invitee of the defendant bank. *Pelletier* and *Libby* are not on point, because they both involved injuries on adjacent private property that the defendants had extended an invitation for their invitees to use. The accident occurred on a public road that the Rhodeses had to use, not in the privately owned parking lot that they were invited to use. Thus, the question presented in this case is different from that in *Quadrino, Pelletier or Libby.*

The question of law presented is whether a business has a duty of care to its invitees who are injured as they foreseeably cross a public road to get to the business.

13

*See Gniadek v. Camp Sunshine At Sebago Lake, Inc.*, 2011 ME 11, ¶ 17, 11 A.3d 308 (""The existence of a duty and the scope of that duty are questions of law").

If the Segee Defendants had a duty to the Rhodes that applied to their passage across River Road, the duty would apply regardless of whether the Rhodeses had parked in the Dolby Defendants' lot or elsewhere. If the Rhodeses had parked along the opposite side of the road, for example, the duty that Plaintiff says applies here would still apply. Thus, the fact that the Dolby Defendants' parking lot is across River Road from the Chapel is of little relevance.

Thus, the duty of care that Plaintiff advocates would require any business whose invitees foreseeably use a public road to take steps to warn or otherwise provide safe passage for them along and across the public road. Presumably the duty would also require the business to warn and/or provide safe passage along any public sidewalks that its business invitees foreseeably use to get to the business.

If such a duty were to exist, the problems in defining and applying it are obvious. How far along the road next to the business premises does the duty extend? Does the duty apply only along the stretch of the foreseeably dangerous road that abuts the business premises or does it extend beyond? Does the duty extend to foreseeably dangerous intersections and public sidewalks that business invitees must pass through or along to access the business? Does the duty extend to drivers or only to pedestrians? If the business is located in a mall, does the duty extend to the foreseeably dangerous public road that invitees must use to get to the mall? Does a business violate the duty if it fails to attempt to get the public agency responsible for

14

the road to fix potholes that can injure a pedestrian or damage a vehicle, or to install the signs, flashing lights, crosswalks, speed bumps and other measures that can make a road safer to use or cross?

In a case bearing a close resemblance to this one, the Supreme Court of California decided that a church that maintained an overflow parking lot across a public road from the church owed no duty to its invitees to provide safe passage across the street. *See Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 404 P.3d 1196 (2017). The court phrased its holding as follows:

> We conclude that a landowner does not have a duty to assist invitees in crossing a public street when the landowner does no more than site and maintain a parking lot that requires invitees to cross the street to access the landowner's premises, so long as the street's dangers are not obscured or magnified by some condition of the landowner's premises or by some action taken by the landowner. Because Vasilenko does not allege that the Church did anything other than maintain a parking lot on the other side of that street, we find that the Church did not owe him a duty to prevent his injury.

3 Cal. 5th at 1082, 404 P.3d at 1198 (internal ellipses omitted).

This case plainly stands for the proposition that a business (or church) that provides parking on the other side of a public road does not thereby assume a duty of care to its invitees who must cross the road to get to the business.

The Restatement (Second) of Torts codifies that very principle. *See* RESTATEMENT (SECOND) OF TORTS § 349:

> A possessor of land over which there is a public highway or private right of way is not subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care

15

(a) to maintain the highway or way in safe condition for their use, or

(b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.

RESTATEMENT (SECOND) OF TORTS § 349.

The moving Defendants' memoranda in support cite numerous other cases supporting their contention that no duty exists in these circumstances.

The relatively few cases in which the courts have found a duty to safeguard access across public roads tend to involve situations in which the defendant has exercised, or has a legal duty to exercise, some degree of control over the road. Thus, for example, in *Alhambra School District v. Superior Court*, the Arizona Supreme Court decided that a school district that had applied for and created a marked crosswalk had assumed a common law duty of care. 165 Ariz. 38, 796 P.2d 470, 474 (1990) ("We conclude, therefore, that in creating the marked crosswalk where none previously existed, the District created a relationship with those who would use the crosswalk and thereby assumed a duty of reasonable care with respect to its operation.") The court also decided that the District had a duty of care established by statute. *See id.*, 165 Ariz. 33, 796 P.2d 474-475.

Neither of these circumstances applies to the moving Defendants in this case. The closest the facts of this case come is in the record evidence that the Dolby Funeral Chapel staff, years before the accident, occasionally helped people cross the road, but there is no evidence that this was more than sporadic and no evidence that the Rhodeses were aware of or relied on this sporadic past assistance.

16

There is also no evidence that any condition on the moving Defendants' property made it less safe for business invitees to cross the River Road to get to the Funeral Chapel. It was purely the risks associated with the road itself, risks over which the moving Defendants had no right of control and thus no duty to control, that caused this tragic accident.

Imposing a duty of care on businesses that extends to their invitees' foreseeable use of public roads and sidewalks over which the businesses have no ownership or property rights or rights of control would effectively eliminate the element of control from premises liability law. It is a fundamental principle of the law of negligence that a person does not have a duty of care as to that over which the person has no control. *See Brown v. Delta Tau Delta,* 2015 ME 75 at ¶ 14.

## Conclusion

Based on the undisputed fact that the accident in this case occurred on a public road over which the moving Defendants had no control or right of control, the court concludes that the moving Defendants have demonstrated that there are no genuine issues as to any material fact and that they are entitled to judgment as a matter of law, on the ground that they did not owe a duty of care to the Rhodeses under the circumstances.

This outcome makes it unnecessary to address the separate arguments raised by Defendant Dolby Family, LLC.

It is hereby ORDERED AND ADJUDGED:

17

1. The Motions for Summary Judgment filed by Defendants Segee Realty, LLC and Segee Enterprises, Inc. and by Defendants Margaret Dolby and Dolby Family, LLC are hereby granted.

2. Judgment on the Plaintiff's Complaint is granted to Defendants Segee Realty, LLC and Segee Enterprises, Inc. and to Defendants Margaret Dolby and Dolby Family, LLC.

Pursuant to M.R. Civ. P, 79(a), the Clerk is hereby directed to incorporate this Summary Judgment Decision by reference in the docket.

Dated April 19, 2019

_____

A. M. Horton, Justice

Entered on the Docket: 4/24/19

18